Henry L. Wolff, Appellee, v. Carl A. Smith, Appellant.

Gen. No. 9,492.

the October term, 1939. Heard in this court at Opinion filed January 25, 1940.

KARL C. WILLIAMS, of Rockford, for appellant; J. PHILLIP DUNN, of Rockford, of counsel.

HALL & DUSHER, of Rockford, for appellee.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

This suit was instituted to recover the alleged contract price of a portrait and frame therefor. A trial was had resulting in a verdict for the plaintiff for $460, upon which judgment was rendered and defendant appeals.

The evidence discloses that appellee is a professional portrait painter having a studio in New York City. Appellant is an officer of the Smith Oil and Refining Company and resides in Rockford. Appellant and his brothers were desirous of having appellee

paint a portrait of their deceased father to hang in the offices of the company and in January, 1937 appellee was in Rockford and on the thirteenth of January, while in the offices of the company, dictated, signed and delivered to appellant the following letter:

"As per our conversation in your office January 12th, I beg to say that the portrait of your Father will be painted entirely on my own responsibility and request with no obligation involved.

"I am sure of the happy result of this portrait and that it will be most satisfactorily accepted as an accurate and vivid likeness of the elder Mr. Smith.

"The price will be five hundred ($500.00) dollars for the canvas to be paid if my work is found to be to the entire satisfaction of all concerned." Appellee painted and delivered this portrait and it was accepted and paid for by appellant and his brothers. At the time this portrait was delivered appellant stated to appellee that some time in the future he would like to have a portrait similar to the one that had just been accepted to hang in his own home. On August 2, 1937, appellee was in Rockford, had lunch with appellant at the Faust Hotel, quoted a price of $400 for a second portrait and $60 for the frame, and, according to appellant's testimony, stated that he would paint the second portrait under the same terms as the first, that he would paint it upon his own responsibility and without any responsibility upon appellant's part to accept it and subject to appellant's full acceptance.

According to the testimony of appellee there was nothing said in this conversation about the terms upon which the second portrait was to be painted. Appellant, however, gave appellee a colored photograph of the first portrait and the next day appellee, while en route to his home in New York, wrote appellant from Toledo, Ohio, as follows:

"My Dear Mr. Smith:

"I feel very much indebted to you for the courtesy and favor of calling at the Hotel Faust last evening to

meet me. Please be assured that I will do all in my power to make the second portrait of your dear father as outstanding and exact a likeness as the first one, and to your entire satisfaction.

"And herewith beg to reiterate my statement to you last evening, that I am very pleased to paint this second portrait on my own initiative and request, and no obligation at no time. The price to be $400—for the canvas (portrait), and additional cost of frame to be $60.—Needless to say that a very fine appropriate frame will be selected to meet with your entire approval. Size of portrait 20 inches by 24 inches." Appellee returned to his studio, painted the portrait and about October 20, 1937, brought it to Rockford and displayed it in appellant's living room and asked appellant for an expression of an opinion. According to appellant's testimony he then and there told appellee that his father's eyes were brown as shown in the first portrait and in the colored photograph but in the second portrait they were painted blue, that the clothing in the first portrait was gray instead of black, that appellee had given the figure a collapsed appearance, that the eyes were not right but were heavy and there was a cloud behind the glasses, that the whole portrait seemed to lack the vigor and vitality that the subject had and which was painted in the first portrait and that there were certain lights and shadows on the face which gave it an unnatural appearance. According to appellee's testimony appellant at this time stated that the second portrait was a very good one but that there was difference in the color of the eyes and clothing. That appellee told appellant that he would be glad to make the changes as he had his paint box with him and thereupon, at appellant's home, did make some corrections. The next day the first portrait was brought to appellant's home from the company's office and appellee testified that in comparing them he, appellee, found that in the second portrait the lines on the forehead were accentuated and on the face the lines were a little too

hard and that these needed changing and the background needed a little deepening in tones. Appellee made these changes. According to the testimony of appellant, he, appellant, told appellee that the portrait was still unsatisfactory and that where corrections were made he felt that when a painting was once completed, it can never be satisfactorily corrected, that this criticism was not only his opinion but the opinion of art critics and that the picture as corrected was not satisfactory as it was not a good likeness of his father and that he was sorry the second portrait was not as satisfactory as the first. Appellant further testified that he told appellee that if appellee so desired the second portrait could hang in appellant's home until after the holidays when his sister would visit him and that he would try to overcome his objections to it but that if he felt, after the holidays, as he felt then, he would return the picture to appellee. According to appellant this arrangement was satisfactory with appellee. Appellee testified, however, that after he had made the corrections appellant did not say that he was still dissatisfied with it but on the contrary said it was all right and for appellee to send him a bill before he left Rockford and that appellant would remit to him within a few days. Appellee thereafter mailed appellant a statement and on November 3 and 10 wrote appellant, to which appellant replied on November 18 and appellee answered on November 22, 1937. From this correspondence it is apparent appellant was not satisfied with the portrait and appellee was equally insistent upon being paid.

On January 11, 1938, appellant wrote appellee that he did not find the portrait satisfactory, would not accept it and inquired what disposition he wished made of it. Appellee replied by asking for a remittance and on February 7, 1938, the picture was returned to appellee by appellant by express. Appellee at first refused to accept it, later did so and subsequently sent it to his

attorneys in Rockford, who offered to deliver it to appellant, but appellant refused to accept it. Upon the trial both portraits were offered and admitted in evidence and were certified to this court and referred to by counsel upon the oral argument of this cause.

Counsel for appellee argue that the contract which forms the basis of this suit was made with reference to the first portrait which was the standard by which the second was to be judged, that the evidence discloses that appellee did all in his power to make the second as outstanding and exact in likeness as the first, that the second portrait is substantially like the first one and appellant cannot arbitrarily reject it but he must be satisfied therewith inasmuch as the word satisfaction as employed in this contract means a reasonable and not an arbitrary satisfaction.

It is appellant's contention that this contract is one involving a matter of fancy, taste or personal judgment and that appellee agreed that the second portrait would be satisfactory to appellant, that therefore appellant is the sole judge of his satisfaction and when he asserts he is not satisfied there can be no recovery. Instructions embodying these theories were submitted by counsel to the trial court who gave those in accordance with appellee's theory and rejected those of appellant.

In 13 C. J. page 675 it is said: "Contracts in which one party agrees to perform to the satisfaction of the other are ordinarily divided into two classes: (1) Where fancy, taste, sensibility, or judgment are involved; and (2) where the question is merely one of operative fitness or mechanical utility. In contracts involving matters of fancy, taste, or judgment, when one party agrees to perform to the satisfaction of the other, he renders the other party the sole judge of his satisfaction without regard to the justice or reasonableness of his decision, and a court or jury cannot say that such party should have been satisfied where he as-

serts that he is not.'' In a note cases illustrating and supporting the text are cited and the statement is made that contracts have been held to fall within the first class and support the rule stated in the text where they have related to portraits, a portrait bust, a legal, literary or scientific article for an encyclopedia, a play to be written by an author for an actor, a set of artificial teeth, a suit of clothes, a fur coat, a carriage, a cabinet organ, support of a parent, and others.

In 12 Am. Jur. 896, 897, it is said that where the subject of a contract is one which involves personal taste or feeling, an agreement that it shall be satisfactory to the promisor necessarily makes him the sole judge of whether it answers that condition. He cannot be required to take it because other people ought to be satisfied with it for that is not what he agreed to do and that a jury should not be permitted to say, in such a case, that a defendant must pay because, by a preponderance of the evidence, he ought to have been satisfied with the work.

In *Erikson v. Ward,* 266 Ill. 259, cited and relied upon by both parties, a contract which provided that a building was to be constructed according to an architect's plans and specifications, in a good, workmanlike and substantial manner, to the satisfaction of the defendant, was construed to mean a reasonable satisfaction not arbitrarily exercised. After so holding the court said: ''It has been held that where one contracts to furnish another personal property, personal services or works of art that will give satisfaction, if the property or the services furnished are not satisfactory there can be no recovery. (*Kendall v. West,* 196 Ill. 221; *Williams Mfg. Co. v. Standard Brass Co.,* 173 Mass. 356, 53 N. E. Rep. 862; *Zaleski v. Clark,* 44 Conn. 223.) The same strictness has not usually been applied to contracts for the construction of buildings.''

*Kendall v. West, supra,* was an action brought by a specialist in monologue to recover damages from a theatrical manager of a musical company for breach of a contract which provided that he was to render satisfactory services and perform at such places and theaters as his employer might require. The plaintiff was discharged because he refused to comply with the defendant's request to shorten the time of his performance and to try his part in black face. In sustaining a judgment in favor of the defendant the court said: "The contract of employment provided that appellant should render 'satisfactory services,' for which he was to receive the sum of $250 per week. It contained no provision in any manner limiting the appellee in the exercise of his judgment as to what should be deemed 'satisfactory services.' The appellant did not undertake to render services which should satisfy a court or jury, but undertook to satisfy the taste, fancy, interest and judgment of appellee. It was the appellee who was to be satisfied, and if dissatisfied he had the right to discharge the appellant at any time for any reason, of which he was the sole judge."

In *Krompier v. Spivek,* 170 Ill. App. 621, it was held that an employment contract by which a designer of ladies' dresses and capes agreed to render services in a manner satisfactory to his employer may be terminated by the employer if the services are not satisfactory to him and that the employer is the sole judge as to whether the services are satisfactory.

In the course of its opinion in *Union League Club v. Blymyer Ice Machine Co.,* 204 Ill. 117, the court said:

"There are authorities, which hold that, 'where one party agrees to do a thing to the satisfaction of another, and the excellence of the work is a matter of taste, such, for instance, as a portrait, bust, suit of clothes, dramatic play, or a particular piece of furni-

ture, the employer may reject it without assigning any reason for his dissatisfaction.' But where the matter involved is not one of 'taste, fancy or judgment, but of common experience, such as an ordinary job of mechanical work, or the quality of material, a different rule applies, and in such cases, the law will say that what in reason ought to satisfy a contracting party does satisfy him.' ''

In *Pennington v. Howland*, 21 R. I. 65, the plaintiff was employed to paint a pastel portrait of the defendant's wife. The court stated that an instruction to the effect that an artist, if he agreed to paint a picture to one's satisfaction, has no cause of action for the price unless the buyer is satisfied, however good the picture may be, would state the law correctly and in the course of its opinion said: ''When the subject of the contract is one which involves personal taste or feeling, an agreement that it shall be satisfactory to the buyer necessarily makes him the sole judge whether it answers that condition. He cannot be required to take it because other people might be satisfied with it; for that is not what he agreed to do. Personal tastes differ widely, and if one has agreed to submit his work to such a test he must abide by the result. A large number of witnesses might be brought to testify that the work was satisfactory to them; that they considered it perfect, and that they could see no reasonable ground for objecting to it. But that would not be the test of the contract, nor should a jury be allowed to say in such a case that a defendant must pay because by the preponderance of evidence he ought to have been satisfied with the work — or, in other words, that it was 'reasonably satisfactory.' Upon this principle numerous cases have been decided.''

*Zaleski v. Clark,* 44 Conn. 218, cited with approval in *Erikson v. Ward, supra,* was an action by a sculptor to recover the contract price of a bust of the defendant's

deceased husband which he had modeled. In its opinion the court said: ''Courts of law must allow parties to make their own contracts, and can enforce only such as they actually make. Whether the contract is wise or unwise, reasonable or unreasonable, is ordinarily an immaterial inquiry. The simple inquiry is, what is the contract? and has the plaintiff performed his part of it? In this case the plaintiff undertook to make a bust which should be satisfactory to the defendant. The case shows that she was not satisfied with it. The plaintiff has not yet then fulfilled his contract. It is not enough to say that she ought to be satisfied with it, and that her dissatisfaction is unreasonable. She, and not the court, is entitled to judge of that. The contract was not to make one that she *ought* to be satisfied with, but to make one that she *would* be satisfied with. Nor is it sufficient to say that the bust was the very best thing of the kind that could possibly be produced. Such an article might not be satisfactory to the defendant, while one of inferior workmanship might be entirely satisfactory. A contract to produce a bust perfect in every respect, and one with which the defendant ought to be satisfied, is one thing; an undertaking to make one with which she will be satisfied is quite another thing. The former can only be determined by experts, or those whose education and habits of life qualify them to judge of such matters. The latter can only be determined by the defendant herself. It may have been unwise in the plaintiff to make such a contract, but having made it, he is bound by it.''

*Gibson v. Cranage,* 39 Mich. 49 was a suit to recover the contract price for making a portrait of the deceased daughter of the defendant. After the picture was finished it was shown the defendant, who was dissatisfied with it and refused to accept it. In sustaining a judgment for the defendant, the court said: ''The plaintiff agreed that the picture when finished should

be satisfactory to the defendant, and his own evidence showed that the contract in this important particular had not been performed. It may be that the picture was an excellent one and that the defendant ought to have been satisfied with it and accepted it, but under the agreement the defendant was the only person who had the right to decide this question. Where parties thus deliberately enter into an agreement which violates no rule of public policy, and which is free from all taint of fraud or mistake, there is no hardship whatever in holding them bound by it.

"Artists or third parties might consider a portrait an excellent one, and yet it prove very unsatisfactory to the person who had ordered it and who might be unable to point out with clearness or certainty the defects or objections. And if the person giving the order stipulates that the portrait when finished must be satisfactory to him or else he will not accept or pay for it, and this is agreed to, he may insist upon his right as given him by the contract."

In his letter to appellant from Toledo on August 3, 1937, appellee wrote that he would do all in his power to make this second portrait as outstanding and exact a likeness of appellant's father as the first one, that he was pleased to paint it on his own initiative without obligation on the part of appellant and added "and to your entire satisfaction." Under the foregoing and many other authorities, under this arrangement appel-lant must be held to be the sole judge whether he would accept the portrait and the trial court erred in not so instructing the jury.

The evidence is conflicting as to whether or not appellant did accept the portrait. He testified that when it was left at his home it was not satisfactory and he did not accept it but that the understanding between the parties was that the portrait was left at his home during the holidays and thereafter he would determine

whether he would accept it or not. Appellee's testimony was that after the slight corrections were made appellant expressed himself as satisfied and requested appellee to send him a bill before he left Rockford and that he would pay it. Whether there was or was not an acceptance of the portrait presented a question of fact for the jury to determine.

For the error in instructions, however, the judgment must be reversed and the cause remanded.

*Reversed and remanded.*