**Ardell ARFSTEN, Plaintiff,**

v.

**FRONTIER AIRLINES, INC. RETIRE-MENT PLAN for PILOTS, and Kenneth Burgess, Merry Ettenberg, Daniel Gunn, and David Kaplan, as members of the Pension Board of the Frontier Airlines, Inc. Retirement Plan for Pilots, Defendants.**

**Civ. A. No. 87-K-1326.**

United States District Court,
D. Colorado.

Aug. 22, 1990.

Timothy J. Parsons, Gorsuch, Kirgis, Campbell, Walker and Grover, Denver, Colo., for plaintiff.

Ira M. Long, Jr., Lester, Roos & Long, Bruce R. Muir, Lentz, Evans & King, Denver, Colo., for defendants.

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

KANE, Senior District Judge.

Ardell Arfsten brings this action under sections 502(a)(1) and (3) of the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1132(a)(1), (3), seeking the payment of disability benefits from the Frontier Airlines, Inc. Retirement Plan for Pilots (Plan). The Plan is administered by a Pension Board (Board), whose members at the time of Arfsten's application for benefits were defendants Burgess, Ettenberg, Gunn and Kaplan. The parties have stipulated to the facts and have filed cross motions for summary judgment. I now grant summary judgment for Arfsten and deny the defendants' similar motion.

### I. *Facts.*

Arfsten is a former employee of Frontier Airlines, Inc. (Frontier) and is a participant, as defined by ERISA, in the Plan. *See* 29 U.S.C. § 1002(7). The Plan is an employee pension benefit plan within the meaning of ERISA. *See id.* § 1002(2)(A). Arfsten had been employed by Frontier for approximately twenty years, until the time that Frontier ceased operations and terminated its employees on August 24, 1986. Arfsten's position at that time was Vice President of Flight Operations.

Frontier filed for bankruptcy on August 28, 1986 and continued operations, principally the liquidation of assets, as debtor-in-possession (Frontier DIP). On August 29, Frontier DIP continued Arfsten's employment on a temporary basis as Vice President of Flight Operations, T.A. (The "T.A." designation indicates a temporary assignment.) This temporary position end-

ed on November 14, 1986. Before leaving Frontier DIP, Arfsten applied for employment with Continental Airlines. After undergoing a pre-hire medical exam and simulator training, Arfsten received his proficiency certification for Continental on October 30, 1986. When Arfsten's temporary employment with Frontier DIP ended on November 14, Arfsten went to work as a pilot for Continental.

Between November 15, 1986 and April 11, 1987, Arfsten flew numerous commercial flights for Continental. On or about April 11, 1987, Arfsten suffered an acute myocardial infarction (heart attack). As a result, his FAA certification was denied, and Arfsten became disabled within the meaning of section 1.9 of the Plan. On May 27, 1987, Arfsten applied to the Board for disability benefits. His application was denied on June 8, 1987.

In rejecting Arfsten's application for benefits, the Board distinguished an earlier ruling, contained in the minutes of its March 16, 1987 meeting, in which the Board held that Frontier pilots who had become disabled within six months of their termination from Frontier on August 24, 1986 would be eligible for disability benefits. The Board stated:

> The Pension Board has previously interpreted Pension Plan Paragraphs 1.9 (definition of disability) and 3.2 (disability retirement eligibility) to provide for a disability retirement benefit to pilots who were medically certified and flying as of Frontier's cessation of operations and who then experienced, prior to January 31, 1987, either (1) the permanent loss of FAA capability due to medical condition [sic] which directly leads to the permanent loss of FAA medical certification (even though the medical certification denial may occur after January 31, 1987). This interpretation is set forth in the Minutes of Pilot Pension Board Meeting of March 16, 1987, a copy of which is enclosed for your easy reference. Because, prior to January 31, 1987, you neither permanently lost your FAA medical certification nor actually lost your flying capability due to a medical condition, you are ineligible for disability retirement under the Pension Plan.

Joint Exhibits to Motions for Summary Judgment, Exhibit 4 at 1. After Arfsten requested further review, the Board upheld its decision. Arfsten then commenced this action, challenging the Board's denial of benefits.

## II. *Standard of Review.*

Both parties acknowledge that the standard of review in this case is governed by the Supreme Court's recent holding in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In *Firestone*, the Court held that, under long-standing trust principles, a pension plan administrator's or fiduciary's decision to deny benefits "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.*, 109 S.Ct. at 956. Thus, I must look to the terms of the Plan itself for guidance on this question. *Id.*

Section 12.2(b) of the Plan authorizes the Board "to construe the Plan and to determine all questions of fact that may arise thereunder." Joint Exhibits to Motions for Summary Judgment, Exhibit 1 at 34. The Board's authority to construe the Plan and make factual determinations is again echoed in a Letter Agreement between Frontier and its pilots who were represented by the Air Line Pilots Association, International. Section 2.1 of that agreement provides:

> The Board shall have the power and obligation to hear and determine all disputes which may arise out of the application, interpretation or administration of the Plan, and all disputes concerning the participation in or benefits of Participants under the Plan, with power to sustain, reverse, alter, modify or amend an action giving rise to such disputes.

Stipulation, filed Mar. 30, 1990, Exhibit A at 191. Based on this evidence, I find that the Board is vested with discretionary authority to determine eligibility for benefits and construe the terms of the Plan. *Compare Lowry v. Bankers Life & Casualty Retirement Plan*, 871 F.2d 522, 524 (5th

Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 152, 107 L.Ed.2d 111 (1989); *Boyd v. United Mine Workers Health & Retirement Funds,* 873 F.2d 57, 59 (4th Cir.1989). Therefore, its determination denying Arfsten's benefits must be upheld unless it was arbitrary or capricious, was not supported by substantial evidence or was erroneous on a question of law. *See Naugle v. O'Connell,* 833 F.2d 1391, 1393–94 (10th Cir.1987); *Peckham v. Board of Trustees of the Int'l Bhd. of Painters & Allied Trades Union,* 653 F.2d 424, 426 (10th Cir. 1981).

### III. *Merits of Denial of Disability Benefits.*

Arfsten makes two primary arguments in contending that the Board abused its discretion in denying him benefits. First, he claims that his April 11 heart attack was a direct result of job-related stress suffered during Frontier's financial downturn. He supports this claim with affidavits of four physicians, in which each stated that on-the-job pressure at Frontier was a central factor leading to his heart attack. *See* Joint Exhibits to Motions for Summary Judgment, Exhibits 9–12. Thus, he argues that his disability, if viewed as a stress-related ailment and not simply a heart attack, commenced before January 31, 1987, while he was still employed temporarily with Frontier DIP.

The Board rejected this argument, finding that Arfsten was not disabled under the terms of the Plan before his April 11, 1987 heart attack because he had "experienced neither (1) the permanent loss of F.A.A. medical certification or (2) the actual loss of flying capability due to a medical condition." *See Id.,* Exhibit 5. Its decision in this respect was neither arbitrary nor capricious. Although Arfsten takes issue with the Board's interpretation of the term "disability" in section 1.9 of the Plan to include the "actual loss of flying capability" in its March 16, 1987 meeting, the Board is clothed with the authority to interpret Plan terms, and its interpretation was reasonable. Likewise, its finding that Arfsten did not experience an actual loss of flying capability is supported by substan-

tial evidence. It is undisputed that Arfsten logged numerous commercial flights with Continental Airlines between November 1986 and April 1987. While Arfsten may have been suffering from stress before and during this time which contributed to his eventual heart attack, the stress itself was not a disabling condition.

Alternatively, Arfsten's second argument is that he was disabled within the terms of the Plan because his heart attack occurred within six months of his termination from Frontier DIP. Arfsten again focuses on the minutes of the Board's March 16, 1987 meeting. In that meeting, the Board unanimously adopted an interpretation of the Plan whereby pilots who had become disabled within six months after their termination from Frontier on August 24, 1986 would be eligible for disability retirement benefits, based on its interpretation of the term "furlough" to include the loss of work due to the cessation of operations. Arfsten argues that he should likewise be entitled to the same six-month "window" for the onset of disability, but that this period commenced upon his termination from Frontier DIP on November 14, 1986, not on August 24, 1986.

I agree with Arfsten that the Board's decision on this score was arbitrary and capricious. Again, I look to the terms of the Plan itself. The Plan's benefits are available to Plan participants. A "Participant" is defined in the Plan to mean "a Covered Employee who has become a participant pursuant to [the Plan's terms] and whose participation has not terminated thereunder." Joint Exhibits to Motion for Summary Judgment, Exhibit A at 5. A "Covered Employee" is, in turn, defined as "a person employed by the Company who is listed on the Pilot's System Seniority List for the Company." *Id.* at 3. The "Company" means "Frontier Airlines, Inc. *or any successor thereto ....*" *Id.* at 2 (emphasis added). Thus, it includes Frontier DIP. *See NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 528, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984).

The parties have further stipulated that Arfsten is a participant within the meaning

of ERISA. Under ERISA, a participant is "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization...." 29 U.S.C. § 1002(7). Thus, I assume that, but for the question as to the timing of his disability, Arfsten has otherwise met all other eligibility requirements for Plan benefits.

With respect to the onset of disability, section 3.2(c) of the Plan provides that for a participant to receive disability retirement benefits the disability must occur "(a) while he is receiving earnings, (b) during a disciplinary suspension, (c) during the first six calendar months of furlough, or (d) during the first three calendar months of a leave of absence to serve in the Armed Forces of the United States...." Joint Exhibits to Motions For Summary Judgment, Exhibit 1 at 7. This provision has now been supplemented by the Board's March 16, 1987 interpretation, in which the Board reversed its earlier position that Frontier's cessation of business on August 24, 1986 was not equivalent to a furlough of employees. The Board ruled:

> [P]ilots will be considered, for purposes of determining disability retirement eligibility, as if they were on furlough for a six-month period following cessation of operations, including the month of said cessation. The Pension Board does not believe that the pilots were on furlough after August 24, 1986. However, the Pension Board found that when read as a whole with due regard for the intent of its disability retirement provisions, the Pension Plan provides for a disability retirement benefit when a pilot experiences a disability, as defined in the Plan, within six months after his work for Frontier ceases due to a lack of work—regardless of whether the lack of work is a reduction in force or cessation of operations.
>
> Consequently, the Pension Board interprets the Pension Plan to provide for a disability retirement benefit to pilots who were medically certified and flying as of Frontier's cessation of operations and who then experienced, prior to Jauary [sic] 31, 1987, either (1) the permanent loss of FAA medical certification or (2) the actual loss of flying capability due to a medical condition which directly leads to the permanent loss of FAA medical certification (even though the certification denial may occur after January 31, 1987).

*Id.*, Exhibit 2 at 1–2.

The Board's decision to consider pilots terminated on August 24, 1986 to be on furlough, but to deny the same construction to Arfsten because he continued in a temporary position, is without rational basis. The Plan expressly requires the Board, "in making any determinations or constructions required [under its terms] and in exercising any discretionary power, [to] treat Participants in like circumstances in like manner." *Id.*, Exhibit 1 at 35. The Board ruled on March 16 that the intent of the Plan was to provide for disability retirement benefits to a pilot whose disability occurs "within six months after his work for Frontier ceases due to lack of work—regardless of whether the lack of work is a reduction in force or cessation of operations." Arfsten's work for Frontier DIP, a successor to Frontier, ceased on November 24, 1986. His disabling heart attack occurred on April 11, 1987, within six months of his departure from Frontier DIP. The Board abused its discretion in attempting to distinguish between pilots terminated on August 24, 1986 and those whose work ended at a later date due to temporary employment. Arfsten was clearly entitled to benefits.

Accordingly, Arfsten's motion for summary judgment is GRANTED. Defendant's motion for summary judgment is DENIED. The Plan is directed to award disability retirement benefits to Arfsten. Each party to pay his or its own costs including attorney fees.