967 F.2d 438
 Ardell ARFSTEN, Plaintiff-Appellee/Cross-Appellant,
v.
FRONTIER AIRLINES, INC. RETIREMENT PLAN FOR PILOTS; Kenneth
Burgess; Merry Ettenberg; Daniel Gunn; David Kaplan, as
members of the Pension Board of the Frontier Airlines, Inc.
Retirement Plan for Pilots, Defendants-Appellants/Cross-Appellees.
 Nos. 90-1367, 90-1375.
 United States Court of Appeals,
Tenth Circuit.
 June 22, 1992.
 
 Christian C. Onsager of Faegre & Benson, Denver, Colo., for defendants-appellants/cross-appellees.
 Timothy J. Parsons (David B. Seserman, with him on the briefs) of Gorsuch, Kirgis, Campbell, Walker and Grover, Denver, Colo., for plaintiff-appellee/cross-appellant.
 Before LOGAN and BRORBY, Circuit Judges, and DAUGHERTY, District Judge.*
 LOGAN, Circuit Judge.
 
 
 1
 Plaintiff Ardell Arfsten brought suit under the Employee Retirement Income Security Act of 1974 (ERISA), Pub.L. No. 93-406, 88 Stat. 829 (codified in relevant part as amended at 29 U.S.C. §§ 1001-1461) against Frontier Airlines, Inc. Retirement Plan for Pilots (Plan) and the four members of the Pension Board (Board), to recover disability retirement benefits he alleged were due him under the Plan. After discovery, both parties filed motions for summary judgment. The district court granted plaintiff's motion for summary judgment and ordered that each party pay their own attorney's fees. Plaintiff filed a motion to alter the judgment, requesting attorney's fees under 29 U.S.C. § 1132(g)(1), and the district court denied the request.
 
 
 2
 Defendants appeal the district court's finding that the Board's decision denying plaintiff disability retirement benefits was arbitrary and capricious. 742 F.Supp. 577. Plaintiff appeals the district court's refusal to award him reasonable attorney's fees.
 
 
 3
 * The facts were stipulated by the parties. Plaintiff is a former long-term employee of Frontier Airlines, Inc. (Frontier) and is a participant in the Plan. The Plan is an employee pension benefit plan as defined by ERISA. See 29 U.S.C. § 1002(2)(A). Plaintiff was employed by Frontier as Vice President of Flight Operations when, on August 24, 1986, Frontier ceased operations and terminated its employees. Frontier filed for bankruptcy on August 28, 1986, and continued operations as debtor-in-possession. On August 29 Frontier as debtor-in-possession employed plaintiff on a temporary basis as Vice President of Flight Operations, T.A. (the "T.A." denotes a temporary assignment). Plaintiff's temporary position was terminated on November 14, 1986.
 
 
 4
 While plaintiff was on temporary assignment for Frontier debtor-in-possession, he applied for employment with Continental Airlines. He successfully completed a pre-hire medical exam and simulator training, and he satisfactorily completed his proficiency check for Continental on October 30, 1986. Continental employed plaintiff as a pilot on November 15. He flew commercial flights for Continental from November 15, 1986, to April 11, 1987. Plaintiff suffered a heart attack on April 11. As a result of the heart attack plaintiff's FAA certification was denied, and he became disabled as defined by Section 1.9 of the Plan.
 
 
 5
 Plaintiff applied for disability benefits. The Board denied his application. Plaintiff requested further review, but the Board upheld its decision denying him benefits. Plaintiff then initiated the instant action challenging the Board's denial of benefits.
 
 II
 
 6
 We must uphold a fiduciary decision to deny claims for retirement benefits unless the decision was "arbitrary and capricious, not supported by substantial evidence or erroneous on a question of law." Woolsey v. Marion Labs. Inc., 934 F.2d 1452, 1457 (10th Cir.1991); Torix v. Ball Corp., 862 F.2d 1428, 1429 (10th Cir.1988); Sage v. Automation, Inc. Pension Plan and Trust, 845 F.2d 885, 895 (10th Cir.1988). If the pension plan vests discretion in administrators, " 'a court of equity will not interfere to control [the administrators] in the exercise of a discretion vested in them by the instrument under which they act.' " Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 111, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (quoting Nichols v. Eaton, 91 U.S. 716, 724-25, 23 L.Ed. 254 (1875)); see Woolsey, 934 F.2d at 1457; cf. de Nobel v. Vitro Corp., 885 F.2d 1180, 1188 (4th Cir.1989) (reviewing court must uphold administrators' construction of disputed provisions if reasonable).
 
 
 7
 In the instant case, § 12.2(d) of the Plan authorizes the Board "to construe the Plan and to determine all questions of fact that may arise thereunder." Supp.App. to Response Brief of Defendants and Cross-Appellees Frontier Airlines, Inc. Retirement Plan for Pilots at 46 (hereinafter Supp.App.). We previously have held that similar language provides a fiduciary authority and discretion "to decide questions of plan interpretation." Pratt v. Petroleum Prod. Management, Inc. Employee Savs. Plan & Trust, 920 F.2d 651, 658 (10th Cir.1990) (noting division of circuits concerning whether such generic language provides a fiduciary with discretion to construe doubtful terms). Furthermore, the Letter Agreement between Frontier and its pilots represented by the Airline Pilots Association, International provided:
 
 
 8
 The Board shall have the power and obligation to hear and determine all disputes which may arise out of the application, interpretation or administration of the Plan, and all disputes concerning the participation in or benefits of Participants under the Plan, with power to sustain, reverse, alter, modify or amend an action giving rise to such disputes.
 
 
 9
 App. to Opening Brief of Plaintiff and Cross-Appellant Ardell Arfsten at 24 (district court order quoting Letter Agreement). We hold that under the Plan the Board's decisions are due deference and must be upheld unless arbitrary and capricious. Woolsey, 934 F.2d at 1457.
 
 
 10
 Paragraph 1.9 of the Plan defines disability as follows:
 
 
 11
 Disability means the permanent inability of a Participant to pass the periodic FAA Physical Examination required for a pilot in his status, by reason of accident, sickness, or natural deterioration, excluding, however, intentionally self-inflicted injury or habitual use of narcotics.
 
 
 12
 Supp.App. at 42. Paragraph 3.2 of the Plan describes the eligibility requirements for disability retirement benefits:
 
 
 13
 Disability Retirement. If a Participant who has completed at least five years of Credited Service suffers a Disability prior to termination of Service (a) while he is receiving Earnings, (b) during a disciplinary suspension, (c) during the first six calendar months of furlough (including the month in which his furlough begins), or (d) during the first three calendar months of a leave of absence to serve in the Armed Forces of the United States (including the month in which such leave begins), he may elect to receive a Disability Retirement Benefit under this Section 3.2.
 
 
 14
 Id. at 44.
 
 
 15
 A literal reading of these provisions does not provide for disability retirement after termination because of cessation of operations. Before plaintiff's application, however, the Board addressed this problem when seven participants who were terminated on August 24, 1986, were unable to pass pre-hire medical exams and thus were no longer employable as pilots. The Board initially refused these pilots disability benefits because their disabilities did not occur during one of the four listed circumstances in § 3.2. The Board later reassessed its position at the request of the applicants, expressing concern that the pilots would not discover whether they met the § 1.9 disability requirement until they attempted to update their FAA medical examinations. Although the Plan does not address this situation, § 3.2 of the Plan provides disability benefits to a participant who suffers a disability "during the first six calendar months of furlough." See Supp.App. at 44 (emphasis added). Thus, the Plan provides some continuing protection for a six month period after involuntary interruption of employment. Following the spirit of the § 3.2 furlough provision, the Board extended the interpretation of furlough to include termination due to cessation of operations. The Board stated that "pilots will be considered, for purposes of determining disability retirement eligibility, as if they were on furlough for a six-month period following cessation of operations, including the month of said cessation." Supp.App. at 51 (minutes of Board meeting of March 16, 1987).
 
 
 16
 Based on this interpretation, the Board determined that plaintiff was not eligible for disability retirement benefits. The Board distinguished plaintiff's situation from that of pilots who had become disabled within six months of their termination from Frontier on August 24, 1986, as follows:
 
 
 17
 The Pension Board has previously interpreted Pension Plan Paragraphs 1.9 (definition of disability) and 3.2 (disability retirement eligibility) to provide for a disability retirement benefit to pilots who were medically certified and flying as of Frontier's cessation of operations and who then experienced, prior to January 31, 1987, either (1) the permanent loss of FAA medical certification or (2) the actual loss of flying capability due to medical condition [sic] which directly leads to the permanent loss of FAA medical certification (even though the medical certification denial may occur after January 31, 1987). This interpretation is set forth in the Minutes of Pilot Pension Board Meeting of March 16, 1987, a copy of which is enclosed for your easy reference. Because, prior to January 31, 1987, you neither permanently lost your FAA medical certification nor actually lost your flying capability due to a medical condition, you are ineligible for disability retirement under the Pension Plan.
 
 
 18
 Supp.App. at 56 (Plan letter to plaintiff).
 
 
 19
 Plaintiff points out that the Plan requires that all similarly situated employees be treated equally.[1] Plaintiff contends that other pilots, terminated in August, were provided a six month window of disability protection. Plaintiff argues he was not terminated until November 14, 1986, his last day at Frontier as debtor-in-possession on temporary assignment. He asserts his disability that resulted from a heart attack on April 11, 1987, fell within a six month period from the time of his "furlough" on November 14.
 
 
 20
 If one reads only selected portions of the Board minutes of March 16, 1987, the plaintiff's argument appears strong. The second paragraph states in part "the Pension Plan provides for a disability retirement benefit when a pilot experiences a disability, as defined in the Plan, within six months after his work for Frontier ceases due to a lack of work--regardless of whether the lack of work is a reduction in force or a cessation of operations." Supp.App. at 51 (emphasis added). The minutes also state, however, that
 
 
 21
 [t]he Pension Board unanimously adopted a modified interpretation of the Pension Plan (specifically paragraph 3.2(c) thereof) which provides that pilots will be considered, for purposes of determining disability retirement eligibility, as if they were on furlough for a six-month period following cessation of operations, including the month of said cessation.
 
 
 22
 Id. (emphasis added). The Board thus construed the term "furlough" to provide employees with a six month protection period running from the date of cessation of operations in August. The Board passed the resolution to provide protection for "pilots who possessed a current FAA medical certificate and were actively employed on the date Frontier ceased operations, but later lost certification in the course of medical examinations at Continental." Id. The Board, however, limited the benefit to those who "experienced, prior to January 31, 1987, either (1) the permanent loss of FAA medical certification or (2) the actual loss of flying capability due to a medical condition which directly leads to the permanent loss of FAA medical certification (even though the certification denial may occur after January 31, 1987)." Id. at 51-52.[2] In contrast, plaintiff passed a medical examination, was hired by another airline, flew commercial flights, and did not become disabled until after January 31.
 
 
 23
 A reading of the entire resolution supports the Board's contention that it intended to establish the date of cessation of operations as the beginning of the "furlough" of all pilots. The Board's determination that plaintiff's furlough began at the date of cessation of operations and ended on January 31, 1987, thus provided plaintiff with the same period of protection as all other pilots. We believe the Board's finding that plaintiff was precluded from recovering disability benefits was reasonable. Plaintiff makes no allegations of bad faith or conflict of interest that would support a finding that the Board acted arbitrarily and capriciously. See Woolsey, 934 F.2d at 1459 (noting that fiduciary's conflict of interest is relevant in determining whether there was abuse of discretion); Torix, 862 F.2d at 1429, 1431 n. 9 (administrator's interpretation will be upheld if reasonable and made in good faith). Therefore, we hold that the Board's denial of plaintiff's claim for disability retirement benefits was not arbitrary or capricious, and we reverse the district court's grant of summary judgment for plaintiff.[3]
 
 
 24
 REVERSED IN PART and REMANDED for proceedings consistent herewith.
 
 
 
 *
 The Honorable Frederick A. Daugherty, Senior United States District Judge for the Western District of Oklahoma, sitting by designation
 
 
 [1]
 The relevant clause provides: "The Pension Board, in making any determinations or constructions required hereunder and in exercising any discretionary power, shall treat Participants in like circumstances in like manner." Supp.App. at 47
 
 
 [2]
 Plaintiff argued before the district court that the heart attack was a result of stress that occurred before January 31, 1987. The Board and the district court rejected this argument, and plaintiff does not raise it on appeal
 
 
 [3]
 Because we reverse the district court's decision on the merits, plaintiff is not a prevailing party, and his arguments on attorney's fees are moot. See Anderson v. Emergency Medicine Assocs., 860 F.2d 987, 992 (10th Cir.1988) (ERISA plaintiff's request for fees "unsupportable" because not prevailing party); see also Davis v. Chicago Mun. Employees Credit Union, 891 F.2d 182, 184 (7th Cir.1989)