**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 3 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

NELSON B. PHELPS, individually
and as representative of all pre-
January 1, 1991, Plan Participants and
Plan Beneficiaries and for the benefit
of U.S. WEST RETIREE HEALTH
CARE MEDICAL PLANS AND U.S.
WEST RETIREE DENTAL CARE
PLANS,

        Plaintiffs - Appellants,

    v.

U.S. WEST, INC., and U.S. WEST,
INC., EMPLOYEES' BENEFIT
COMMITTEE,

        Defendants - Appellees.

No. 97-1270

(D. Colorado)

(D.C. No. 95-Z-2759)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR**, **ANDERSON**, and **LUCERO**, Circuit Judges.

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Nelson B. Phelps appeals from the district court's denial of his motion for attorney's fees under the Employee Retirement Income Security Act ("ERISA") § 502(g)(1), 29 U.S.C. § 1132(g)(1). Phelps argues on appeal that the district court abused its discretion in denying his motion for attorney's fees because he was the "prevailing party" in the litigation, and the factors used in determining whether to grant attorney's fees under § 502(g)(1) weigh in his favor. We affirm.

## BACKGROUND

In March 1990, Mr. Phelps retired from his position as an Executive Director of US West Human Resources. When he retired, Phelps, along with approximately 30,000 other former US West employees who retired prior to January 1, 1991, was covered by the US West Health Care Medical Plan ("the Plan").[1] The Plan is a traditional indemnity plan,[2] and at the time he retired, Phelps was assured by US West representatives that "US West was committed to

---

[1]There are actually nine retiree health care plans at issue here. See Appellant's Br. at 3-4. For purposes of clarity in this opinion, they will be referred to collectively as "the Plan." US West is the sponsor of the Plan, and US West's Employees' Benefit Committee ("EBC") is the named fiduciary and plan administrator. Id.

[2]This means that generally, plan participants may visit almost any health-care provider, but they are responsible for an annual deductible and co-insurance for office visits. Plan participants are reimbursed for reasonable and customary expenses. Appellant's App. at 201.

providing . . . health and dental care benefits for life and that the level of coverage would not be reduced." Appellant's Br. at 4.

Five years after Phelps retired, however, US West began what Phelps perceived as a concentrated campaign "to enroll the 30,000 pre-'91 retirees in Health Maintenance Organizations ('HMOs')." Appellant's Br. at 5. Phelps viewed the use of HMOs as a reduction in the level of his health care and became concerned that none of US West's guarantees of lifetime unreduced indemnity plan coverage were memorialized in the governing Plan documents. In particular, Phelps was concerned by the Plan's reservation-of-rights clause, which stated that US West "reserves the right to terminate or amend [the Plan] at any time with respect to any or all classes of current or future Participants (including Retired Employees), subject to applicable limitations of the law." Appellant's App. at 114.

Because of his concern, in August 1995, Phelps filed a class-wide administrative claim with the EBC, demanding that the EBC obtain a resolution from the US West, Inc., Board of Directors formally acknowledging that US West was contractually bound not to reduce or eliminate lifetime health coverage for pre-1991 retirees. Appellant's App. at 117. Phelps also demanded that the EBC amend the Plan by eliminating the reservation-of-rights clause and inserting language memorializing its commitment to the pre-1991 retirees. Id. Then, in

November, before receiving a response to his administrative claim,[3] Phelps filed a federal class action suit against US West under ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B), seeking injunctive relief and an order declaring the rights of all pre-1991 retirees to lifetime, unreduced indemnity-plan coverage.

About a week after Phelps filed his lawsuit, the EBC denied his administrative claim because it had "no authority to require the US West, Inc. Board of Directors to issue resolutions of any nature." Appellant's App. at 215. The EBC nevertheless assured Phelps that "[g]iven that the Company has clearly, publically [sic], and continually acknowledged its health care commitment to pre-1991 retirees, the Plan will be amended to formalize this long-standing commitment." Id. Phelps' appeal of this decision was denied.

Approximately two months later, in January 1996, US West formally amended the Plan's language to guarantee unreduced lifetime indemnity plan coverage to every employee that retired prior to 1991. Phelps nevertheless proceeded with his lawsuit because he remained concerned that language in the

---

[3]US West's traditional administrative procedure allows the company 90 days to respond to administrative claims. Appellant's App. at 214. Although he was aware of the general 90-day response period, Appellant's App. at 261, Phelps filed his lawsuit in federal court after only 75 days. Phelps asserts that he was not required under ERISA to exhaust administrative remedies because his claim was not a claim for payment of benefits. Appellant's Br. at 6 n.1.

amendment allowed US West to freeze "reasonable and customary charge reimbursement schedules" at January 1996 values.

Finally, in February 1996, during the deposition of the Secretary of the EBC, US West resolved Phelps' lingering question regarding the reimbursement schedules, and the parties entered into a stipulation of dismissal. The next day, Phelps filed a motion seeking attorney fees of $27,072.50 pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), and requesting an evidentiary hearing. Appellant's App. at 61. The district court referred the matter to a Magistrate Judge.

After extensive briefing and the submission of evidence,[4] the Magistrate recommended that the district court deny Phelps' motion for attorney fees because

---

[4]Phelps complains that although the Magistrate Judge originally granted an evidentiary hearing, he subsequently vacated the evidentiary hearing and then denied Phelps' demand for permission to supplement the briefs by submitting additional exhibits (although he did allow Phelps to supplement his briefs with additional authority). See Appellant's Br. at 24 n.5; Appellant's App. at 312-13, 320, 339. Because each party filed a substantial number of affidavits and exhibits, see Appellant's App. at 73-280, 285-309, and because Phelps' request to supplement was made more than a year after briefing was completed and included many exhibits already in the record, we cannot say that the Magistrate Judge erred in his decision to not consider further evidence. See Florence Nightingale Nursing Serv. Inc. v. Blue Cross/Blue Shield of Alabama, 41 F.3d 1476, 1485 (11th Cir. 1995) (stating that evidentiary hearings are not required on the attorney's fee issue).

Phelps also complains that because the Magistrate Judge did not comment on Phelps' affidavit in his recommendation, he must not have even considered it. Appellant's Br. at 23. We find this assertion unpersuasive.

Phelps was not the prevailing party in the litigation and because the factors used to determine whether to grant attorney's fees under § 502(g)(1) did not weigh in his favor. Appellant's App. at 342-44. After considering Phelps' objections to the Magistrate's recommendation and US West's response, the district court adopted the Magistrate's recommendation and denied Phelps' motion for attorney's fees. Phelps filed a timely notice of appeal.

**DISCUSSION**

We review the district court's decision whether to award attorney's fees for an abuse of discretion and will reverse "only upon reaching 'a definite conviction that the court, upon weighing relevant factors, clearly erred in its judgment.'" Thorpe v. Retirement Plan of Pillsbury Co., 80 F.3d 439, 445 (10th Cir. 1996) (quoting Gordon v. United States Steel Corp., 724 F.2d 106, 108 (10th Cir. 1983)).

ERISA provides that in any action brought by an ERISA plan participant, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1). Although the statute is not express on this point, most courts, including this one, have interpreted ERISA to allow an award of attorney's fees only to prevailing parties. See, e.g., Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 89 n.14 (1982); Arfsten v.

Frontier Airlines, Inc. Retirement Plan for Pilots, 967 F.2d 438, 442 n.3 (10th Cir. 1992); Martin v. Blue Cross & Blue Shield of Va., Inc., 115 F.3d 1201, 1210 (4th Cir.) (collecting cases), cert. denied, 118 S. Ct. 629 (1997). But see Tourangeau v. Uniroyal, Inc., 101 F.3d 300, 308 n.6 (2d Cir. 1996).

Phelps argues that he was the prevailing party because US West did not begin "serious consideration" of the Plan amendment until after he filed his administrative claim and lawsuit. Appellant's Br. at 28-30.[5] The burden here, however, is not on US West to show prior "serious consideration." Rather, because the suit was disposed of without full litigation on the merits, the burden was on Phelps to show that his suit was a "catalyst" or "material factor" in obtaining concessions from US West and that US West did not act for "wholly gratuitous" reasons in response to his suit. See Hooper v. Demco, Inc., 37 F.3d 287, 292 (7th Cir. 1994) (quotations omitted).

While the timing of the amendment, as outlined above, may indirectly support Phelps' claim that he was the prevailing party, the evidence as a whole does not. For example, although Phelps presented the affidavit of a Retiree Advisory Board member, stating the Manager of Health Care Administration,

---

[5]In the case cited by Phelps, we held that material misrepresentations about future plan offerings do not constitute a breach of fiduciary duty under ERISA unless the misrepresentations were made after the employer had "seriously considered" the future offering. See Hockett v. Sun Co., 109 F.3d 1515, 1522-24 (10th Cir. 1997). The "serious consideration" standard, as defined in Hockett, is inapplicable here.

Marie Serold, had admitted that the Plan amendment was caused by Phelps' lawsuit, Appellant's App. at 90, US West presented the equally convincing affidavit of Marie Serold herself, supported by the affidavit of another Retiree Advisory Board member, stating that Serold had not attributed the Plan amendment to Phelps' lawsuit. Appellant's App. at 230-31, 279. And although Phelps presented a letter written by the President and CEO of US West Communications, Inc., which stated that less than 24 hours after Phelps' lawsuit was filed, US West polled the EBC members and reached an agreement to amend the Plan, Appellant's App. at 123, US West presented the affidavit of the EBC's Secretary, which clarified that US West had been considering how to best resolve this very issue since the spring of 1995 and was not motivated to act by Phelps' lawsuit. Appellant's App. at 202-03.

On the record as a whole, we cannot say that the district court abused its discretion in determining that Phelps did not cause US West to amend the Plan and thus was not the prevailing party in the litigation. Because we conclude that Phelps did not meet the threshold requirement of showing he was the prevailing party, it is unnecessary for us to reach Phelps' argument that the factors used to

determine whether to grant attorney's fees under ERISA to prevailing parties weigh in his favor.[6]

**CONCLUSION**

We conclude that the district court did not abuse its discretion in denying Phelps' motion for attorney fees.[7]

_____

[6]Because the granting of attorney's fees under ERISA is not to be done as a matter of course, in Gordon v. United States Steel Corp., we specified five nonexclusive factors to guide the district court's decision.  These factors are:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to personally satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

Gordon, 724 F.2d at 109.  Here, the Magistrate Judge analyzed the Gordon factors and found they did not weigh in Phelps' favor.  See Appellant's App. at 342-44.  We have reviewed the record, and if we were to address this issue, we could not say the Magistrate Judge's view of the evidence is unreasonable or unsupported.

[7]US West also argues that Phelps' underlying claim was either unripe because US West had never reduced or threatened to reduce the pre-1991 retirees' health benefits, is now moot because of the January 12, 1996, Plan amendment, or is barred by ERISA's three-year statute of limitations because Phelps should have been aware of the reservation-of-rights clause when he retired in 1990.  Appellee's Br. at 13-15, 21 (citing ERISA § 413(2)).  Because we are affirming the district court's denial of Phelps' attorney's fees, it is unnecessary for us to address these jurisdictional issues concerning the underlying action.  See Norton ex rel. Chiles v. Mathews, 427 U.S. 524, 532 (1976) (stating that the Court has reserved difficult questions of jurisdiction "when the case alternatively could be resolved on the merits in favor of the same party").

AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge