**Jack SALIAMONAS, Plaintiff,**

v.

**CNA, INC., Defendant.**

**No. 99 C 5548.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 10, 2001.

Arthur R. Ehrlich, Goldman & Ehrlich, Chicago, IL, for Plaintiff.

Robert J. Golden, Dowd & Dowd, Ltd., Chicago, IL, Philip F. Brown, Brenner, Brown, Golian & McCaffrey, Columbus, OH, for Defendant.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Jack Saliamonas has coronary artery disease and severe aortic insufficiency, and he has had two coronary bypass surgeries to correct a history of angina. He worked for Elmhurst Memorial Hospital in a very stressful job. His disability insurer, CNA, Inc. ("CNA"), however, denied him disability benefits because it said Mr. Saliamonas can perform sedentary work and is therefore not disabled. Mr. Saliamonas sued for wrongful denial of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), claiming that he is disabled from his occupation. I grant Mr. Saliamonas' motion and deny CNA's motion.

### I.

Mr. Saliamonas worked for Elmhurst Memorial Hospital as a Programmer Ana-lyst II. The job summary describes his position as a computer systems manager. He worked on the Medipac team of the Information Services Department, which handles patient accounting, medical records and registration. He was on call twenty-four hours a day, seven days a week on a rotating schedule. Mr. Saliamonas has a history of heart disease and angina, and sometimes experienced chest pains while at work. After two coronary bypass surgeries, Elmhurst Memorial Hospital took Mr. Saliamonas off of the rotating on-call schedule, but the stress of the job caused his condition to deteriorate. On August 7, 1998, Mr. Saliamonas took medical leave from the hospital. Mr. Saliamonas submitted a claim for disability benefits to the defendant, CNA, which provides a group long-term disability policy ("the Policy") to the employees of Elmhurst Memorial Hospital. He claimed that he was unable to return to work as a result of heart and artery disease.

Dr. Lawrence Barr submitted an Attending Physician's Statement as part of Mr. Saliamonas' claim. Dr. Barr circled the option on the form that said "Dates totally disabled" but he failed to fill out the spaces for the dates. Dr. Barr noted that Mr. Saliamonas' condition had improved but he checked the box on the form that said he did not expect a fundamental or marked change in the future. Dr. Barr listed Mr. Saliamonas' physical impairment as Class Four on a scale of five: "moderate limitation of functional capacity; capable of clerical/administrative (sedentary) activity," and 60–70% impairment. Dr. Barr left a number of areas of the form blank, including the dates of disability and mental/nervous impairment. The only restriction he placed on Mr. Saliamonas' activities was heavy lifting. In the Sick Leave Verification Report, Dr. Barr diagnosed Mr. Saliamonas with coronary artery disease and severe aortic insufficiency, and said that Mr. Saliamonas could not return to work because his disability was permanent. In a letter to CNA on Febru-

ary 22, 1999, Dr. Barr expressed his concern about the effect of work-related stress on Mr. Saliamonas' permanent heart condition. Dr. Barr also reiterated that Mr. Saliamonas was suffering from severe aortic insufficiency.

The Policy provides total disability benefits for a 24–month period if the insured employee, because of sickness or injury, is:

(1) continuously unable to perform the substantial and material duties of his regular occupation;

(2) under the regular care of a licensed physician other than himself; and

(3) not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience.

Mr. Saliamonas challenges his denial of benefits pursuant to ERISA, and both parties move for summary judgment.

## II.

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999). When considering a motion for summary judgment, I review the entire record, drawing all reasonable inferences in the light most favorable to the nonmoving party. *Cornfield by Lewis v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1320 (7th Cir.1993). I will consider the cross motions for summary judgment together.

■ A denial of benefits challenged under ERISA is reviewed de novo unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 330 (7th Cir.2000). There is a presumption against discretion and in favor of de novo review that can only be overcome by an express

grant of discretion to the plan administrator. *See Herzberger*, 205 F.3d, at 330–31. The level of specificity the Seventh Circuit requires to overcome this presumption is indicated by the "safe harbor" language recommended by the *Herzberger* court: " 'Benefits under this plan will be paid only, if the plan administrator decides in his discretion that the applicant is entitled to them.' " *Id.* at 331. This language is not required, but the Seventh Circuit will not find that a plan administrator has discretion without language of comparable explicitness.

■ The Policy in this case provides that it "will pay the Monthly Benefit for each month of Total Disability which continues after the Elimination Period," and that "[b]enefits will be paid monthly immediately after [w]e receive due written proof of loss." CNA argues that this language and language from the Summary Plan Description ("SPD") confers discretion sufficient to invoke deferential review. Under the heading "What Constitutes Total Disability," the SPD states:

To be considered disabled, you must be under a doctor's care. Normally, your own physician determines the degree of physical impairment caused by the disabling condition. Temporary disabilities are covered as long as the definition of total disability is satisfied.

Relying only on Sixth Circuit cases, CNA argues that the words "due" and "is satisfied" in this policy confer discretion because they mean that CNA's administrator must be satisfied, and therefore has discretion. *See Miller v. Metropolitan Life Insurance Co.*, 925 F.2d 979 (6th Cir.1991) ("satisfactory"); *Yeager v. Reliance Standard Life Insurance Co.*, 88 F.3d 376 (6th Cir.1996) (same).

The Seventh Circuit has rejected the position of the Sixth Circuit that "due proof" and "satisfactory" are magic words that confer discretion. "[T]he presumption of plenary review is not rebutted by the plan's stating merely that benefits will

be paid only if the plan administrator determines that they are due, or only if the applicant submits satisfactory proof of his entitlement to them." *Herzberger,* 205 F.3d at 331. The law of the Seventh Circuit is binding on me, and I find accordingly that the language in the Policy and the SPD is insufficient to overcome the presumption of plenary review. I review CNA's denial of benefits de novo, which means that I may consider the record that was before the administrator as well as any other evidence I consider necessary to resolution of the benefits claim. *See Casey v. Uddeholm Corp.,* 32 F.3d 1094, 1099 (7th Cir.1994).

### III.

■ CNA argues that it was justified in denying disability benefits to Mr. Saliamonas because his only limitation was heavy lifting, and his job did not require any lifting. In so concluding, CNA relies only on the first of ten "essential job functions" in the position description for Mr. Saliamonas' position (Programmer Analyst II): "[d]evelops detailed technical specifications based upon user defined requirements." CNA ignores the paragraph above this in the position description that says that he "shares responsibility for software problems [and] rotates through 24 hour/day call schedule." Mr. Saliamonas does not dispute that Dr. Barr has said he is capable of some sedentary work (clerical or administrative), but he argues that he cannot do systems management, his occupation, because of the stress of being a systems manager in a hospital environment, where immediate access to patient records can be critical. Mr. Saliamonas submitted two letters to CNA from his work supervisor and manager detailing the level of stress inherent in his job. CNA does not deny that the position required some around-the-clock shifts, but it argues that regardless of the stress, Mr. Saliamonas is not disabled because he can still perform some sedentary work.

The fact that stress affects Mr. Saliamonas' ability to work is not in dispute. CNA merely disagrees that it affects his ability to perform the substantial and material duties of his regular occupation—i.e., that he is disabled. The fact that Dr. Barr said that Mr. Saliamonas is capable of some sedentary work does not mean that, as a matter of law, he is not disabled. Under CNA's policy, the question is whether an insured can perform the substantial and material duties of his or her regular occupation, not whether they are capable of doing any work at all. Dr. Barr has determined that Mr. Saliamonas' condition prevents him from working in his occupation, and CNA disagrees with his conclusion, not the underlying facts.

Dr. Barr's determination of disability is corroborated by the fact that Mr. Saliamonas is receiving Social Security disability benefits for his disability, and CNA has been aware of this since June 30, 1999. The Social Security definition of disability is "inability to engage in *any* substantial gainful activity." 42 U.S.C. § 423(d)(1)(A) (emphasis added). That is even narrower than the definition provided by CNA, which requires only an inability to perform one's *own* occupation, not *any* occupation. The fact that the Social Security Administration found him to be disabled under a stricter standard than CNA, while not conclusive, is certainly probative of disability. *See Halpin v. W.W. Grainger, Inc.,* 962 F.2d, 685, 695 (7th Cir.1992).

CNA notified Mr. Saliamonas that it was denying his claim because of a lack of "objective medical evidence" of disability. But nowhere in the Policy or the SPD does CNA indicate that its decisions will be based only on "objective medical evidence" of disability. The Policy is a contract, *see Herzberger,* 205 F.3d at 330, and CNA cannot simply add new terms. CNA also cites Dr. Barr's failure to identify a specific time frame for the disability, but Dr. Barr did notify CNA that this disability was permanent and that Mr. Saliamonas would be unable to return to work. If

CNA believed that Dr. Barr's submission was incomplete, it could have requested that Dr. Barr fill out the forms again in more detail. But on the basis of the material in the record, CNA was not justified in denying benefits because of Dr. Barr's omissions.

Finally, CNA told Mr. Saliamonas that it was denying his application for benefits because the Policy does not insure against "future risks or possible loss." CNA's interpretation suggests that heart and artery disease can only rise to the level of a disability if they are sure to cause a heart attack. CNA does not dispute the diagnosis of coronary artery disease and severe aortic insufficiency. This is not a future condition, but rather a present risk.

CNA cites two cases to support its argument that potential stress is not compensable under the Policy. Both are distinguishable. *See New York Life Ins. Co. v. Harvey*, No. 97–2140, 1998 WL 390546 (4th Cir.1998); *Arfsten v. Frontier Airlines Inc. Retirement Plan*, 742 F.Supp. 577 (D.Colo.1990). *Harvey* arose under Maryland disability law, not ERISA, and the Fourth Circuit reviewed it under a "clearly erroneous" standard. The plaintiff in that case had suffered only a "mild" heart attack. 1998 WL 390546 at *1. Moreover, the plaintiff's own doctor had said there was no physical condition preventing him from going back to work, and that his heart was recovered and functioning normally. *Id.* at *2. However, Mr. Saliamonas has a history of heart disease that is well documented in CNA's claim file, and his doctor has said that he is permanently disabled and unable to return to work. This case is distinguishable because, as a matter of fact, Mr. Saliamonas' case is more severe than Mr. Harvey's was, and because, as a matter of law, I apply a less deferential standard of review. In *Arfsten*, the court reviewed the denial of benefits under the arbitrary and capricious standard, and the issue presented by the case was whether Mr. Arfsten was a covered employee, not whether he was dis-

abled. 742 F.Supp. at 579. I disregard the dicta about whether "stress itself" is a disabling condition because it was not the issue before the court, and because, in Mr. Saliamonas' case, the question is whether stress coupled with severe aortic insufficiency and coronary artery disease is a disability, not whether "stress itself" is.

Mr. Saliamonas is disabled according to the terms of CNA's policy. He is not gainfully employed, he is under the regular care of Dr. Barr, and Dr. Barr has determined that Mr. Saliamonas is continuously unable to perform the substantial and material duties of his occupation as a systems manager because of the effect of stress on his permanent heart condition. Even if I were reviewing this under the more deferential "arbitrary and capricious" standard, I would reject CNA's request for summary judgment because their denial was unreasonable. To suggest, as CNA does, that a permanent heart condition that may be aggravated by stress can only rise to the level of a disability when and if the insured suffers a heart attack is unreasonable. Since this argument fails under deferential review, it certainly fails under de novo review, and I conclude that this suggestion is wrong as a matter of law.

### IV.

Because I find that Mr. Saliamonas is disabled as a matter of law, I DENY CNA's motion and GRANT summary judgment to Mr. Saliamonas.