Affirmed by published opinion. Senior District Judge ELLIS wrote the majority opinion, in which Senior Judge HAMILTON joined. Judge WILKINSON wrote a dissenting opinion.
OPINION
ELLIS, Senior District Judge:
In this ERISA case, appellant Robert Stanford asks us to reverse appellee Continental Casualty Company’s denial of long term disability benefits because, he argues, Continental’s determination was unreasonable. The district court affirmed Continental’s determination, finding that the matter fell within the discretion of the plan administrator and rejecting Stanford’s argument that the determination was procedurally improper. For the reasons that follow, Continental’s denial of benefits is affirmed.
I.
Appellant Stanford is a trained nurse anesthetist, a health care professional responsible for administering anesthesia to patients undergoing surgical and obstetric procedures. Stanford was employed in this capacity at the Beaufort Memorial Hospital in Beaufort, South Carolina beginning in April, 2002. Among the drugs Stanford administered was Fentanyl, a powerful painkiller and narcotic. Stanford began self-administering Fentanyl, and by September 2003 he was addicted to the drug.
*356 Stanford left his position at Beaufort and entered an addiction treatment and rehabilitation program in October 2003. After completing the program, but before returning to work, Stanford relapsed and entered a second treatment program in November, 2003, where he remained for three months. Stanford was discharged in late February, 2004, and was approved to return to work on March 8, 2004.
While attending this second treatment program, Stanford applied to appellee Continental for long term disability benefits. Continental, which both insured and administered Beaufort’s employee benefit plan, approved Stanford’s application.
Stanford returned to work on March 12, 2004, but quickly began taking Fentanyl again. He left work for a second time on May 19, 2004 and again sought treatment for his drug use. While undergoing treatment in Georgia, Stanford again applied to Continental for long term disability benefits. Continental approved this second application for the duration of Stanford’s inpatient treatment in Georgia, but notified him that his claim remained under review.
In December, 2004, a registered nurse consultant with Continental spoke to Stanford’s treating physician, who indicated that Stanford no longer suffered any impairment that would prevent him from performing the duties of his occupation as a nurse anesthetist. Based on this representation, Continental terminated Stanford’s long term disability benefits in January, 2005.
Stanford requested administrative review of the termination decision, providing letters from his treating physician indicating that Stanford remained at risk for relapse if exposed to Fentanyl, as well as an article from a medical treatise discussing the risk of relapse among anesthesiologists. Stanford also indicated that the South Carolina Board of Nursing had restricted his license, prohibiting him from having access to narcotics or working as a Certified Registered Nurse Anesthetist.
Continental, acting pursuant to its discretionary authority as plan administrator,[1] denied Stanford’s appeal on February 21, 2005, writing that “the policy does not cover potential risk,” and that Stanford was therefore not entitled to further long term disability benefits. Having exhausted his administrative remedies, Stanford filed the present lawsuit seeking to reverse Continental’s denial of benefits. The district court granted Continental’s Motion for Summary Judgment on August 7, 2006, and Stanford appeals.
II.
Our analysis must begin with a statement of the appropriate standard of review. This court has developed a “well-settled framework for review of the denial of benefits under ERISA plans.” Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 232 (4th Cir.1997). Where a plaintiff appeals a grant of summary judgment, we review the denial of benefits de novo. Id. And when the plan at issue grants the administrator discretionary authority to determine eligibility or to construe the terms of the plan, the denial decision must be reviewed for abuse of discretion. Id. Generally, this abuse of discretion standard means that an administrator’s decision will not be disturbed if it is reasonable, even if the reviewing court would *357 have come to a different conclusion. Id. Yet, we have often recognized that a conflict of interest exists when a benefit plan is administered and funded by the same party, as is the benefit plan at issue here. The reviewing court must consider this conflict of interest in determining whether the administrator has abused its discretion; in other words, “the fiduciary decision will be entitled to some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict.” Doe v. Group Hospitalization & Medical Services, 3 F.3d 80, 87 (4th Cir.1993). Nevertheless, precedent in this circuit makes clear that “in no case does the court deviate from the abuse of discretion standard,” Ellis, 126 F.3d at 233. In other words, the reduced deference standard does not require the reviewing court to construe every contract ambiguity in favor of the claimant. To hold otherwise would effectively erase the plan provision granting the administrator discretion to construe plan terms. Instead, where, as here, the plan is administered and funded by the same party, the court applies a sliding scale according to which the plan administrator’s decision must be more objectively reasonable and supported by more substantial evidence as the incentive for abuse of discretion is shown to increase. Id. at 228.
Importantly, the mere existence of a conflict of interest is insufficient to demonstrate an abuse of discretion. If it were sufficient, a conflicted plan administrator would never be able to make an adverse benefit determination, for a benefit applicant would always be able to have the adverse ruling reversed on appeal. Instead, a plaintiff must produce some evidence indicating that the adverse decision was motivated by the conflict. Such evidence might be intrinsic, such as an internal communication directing the adverse ruling, or it might be extrinsic, such as the fact that other administrators not operating under a conflict of interest had interpreted substantially identical plan provisions in favor of the applicant. Absent such evidence, courts are unable to review benefit decisions effectively while adhering to the clearly established abuse of discretion standard.
Additionally, the existence of a conflict of interest is only one factor to be considered in reviewing a denial of benefits for abuse of discretion. The reviewing court must also consider, to the extent relevant, (1) the scope of discretion conferred; (2) the purpose of the plan provision in which discretion is granted; (3) any external standard relevant to the exercise of that discretion; and (4) the administrator’s motives. Haley v. Paul Revere Life Ins. Co., 77 F.3d 84, 89 (4th Cir.1996).
Stanford and Continental agree that the plan grants Continental, as plan administrator, discretionary authority to determine eligibility and to construe the terms of the plan. The parties also agree that Continental both administers and funds the plan. Accordingly, we review Continental’s decision denying Stanford long term disability benefits under the modified abuse of discretion standard, reducing our deference only to the degree necessary to neutralize any untoward influence resulting from Continental’s conflict of interest, as shown in the record.
III.
Stanford argues that Continental abused its discretion in two respects when it denied him long term disability benefits in January, 2005. First, he argues that Continental applied an unreasonably restrictive interpretation of the benefit plan when it concluded that the plan did not apply to the potential risk of relapse. Second, he *358 argues that Continental violated ERISA regulations by issuing its denial of benefits without consulting a health care professional. We address each argument in turn.
A.
Stanford first argues that Continental’s interpretation of the terms of the benefit plan was unreasonably restrictive. To qualify for long term disability benefits under Beaufort’s benefit plan, a claimant must establish a “disability,” which for the purposes of the plan means “injury or sickness causing] physical or mental impairment to such a degree of severity that you are ... continuously unable to perform the material and substantial duties of your regular occupation.” Although Continental did not contest Stanford’s characterization of his addiction as a sickness, it concluded that since Stanford no longer suffered from physical or mental impairments as a result of his drug use or his recovery, the fact that he remained an addict did not render him “unable to perform the material and substantial duties of [his] regular occupation.”
Stanford argued in his administrative appeal that his addiction did render him unable to perform his duties because of the high risk that he would relapse into drug use if exposed to Fentanyl in the workplace. Continental rejected this argument, concluding that “[t]he policy does not cover potential risk” of relapse. We cannot say that Continental’s conclusion is unreasonable, even in light of Continental’s conflict of interest as insurer and administrator of the benefit plan, and we must accordingly affirm.[2]
Stanford cites a number of cases in support of his argument that risk of relapse is a form of disability under ERISA-gov-erned benefit plans. Many of these cases involve the risk of recurrence of a physical condition such as a heart attack.[3] But the risk of a heart attack is different from the risk of relapse into drug use. A doctor with a heart condition who enters a high-stress environment like an operating room “risks relapse” in the sense that the performance of his job duties may cause a heart attack. But an anesthetist with a drug addiction who enters an environment where drugs are readily available “risks relapse” only in the sense that the ready availability of drugs increases his temptation to resume his drug use. Whether he succumbs to that temptation remains his choice; the heart-attack prone doctor has no such choice.[4]
More apposite are those cases cited by Stanford in which courts have found the risk of relapse to satisfy definitions of disability similar to the language of the benefit plan here.[5] But these cases do not *359 settle the matter, both because they are not authoritative and because there exist directly contradictory cases.[6] This disagreement among the courts demonstrates that reasonable minds can, and do, differ as to whether the risk of relapse renders an addict unable to perform the material and substantial duties of his work. Given this widespread, thoughtful, and reasonable disagreement, Continental’s decision cannot plausibly be termed unreasonable.[7]
Finally, Stanford has not shown that Continental’s conflict of interest affected its decision in any way. As noted above, the modified abuse of discretion standard diminishes our deference to the plan administrator’s decision, but only to the degree necessary to offset any conflict of interest.[8] Stanford has not shown that the conflict had any effect on Continental’s decision, and to overturn that decision simply because Continental was conflicted would eliminate deference entirely. Accordingly, even under a modified abuse of discretion standard, we must defer to Continental’s determination that the benefit plan did not cover risk of relapse.
We are not unsympathetic to Stanford’s argument that Continental’s policy would require him to return to work and in fact suffer a relapse in order to qualify for long term disability benefits. We recognize that this creates a somewhat troubling— some might say perverse — incentive structure: an addict who continues to abuse drugs will be entitled to long-term benefits, but upon achieving sobriety will lose those benefits unless he again begins to abuse drugs. Although this argument is not without force, it operates on a false assumption, namely that disability benefits are a sort of reward for sobriety. In fact, sobriety’s reward is the creation of innumerable opportunities that were closed to Stanford as long as he continued to use drugs. These new-found opportunities do not include a return to his former job as a nurse anesthetist, but this is the result of a license limitation and the prudence of employers, not any physical disability or mental impairment. No prudent employer would hire Stanford into a job in which he administered the drug to which he is addicted, just as no prudent employer would hire a recovering alcoholic as a bartender. More importantly, no prudent addict would place himself in such a position. Such prudence is a part of recovery, and it can have significant costs — but these costs are greatly outweighed by the opportunities sobriety provides. It is important to remember that Stanford is not physically disabled or mentally impaired; though prudence and his license dictate that he cannot return to his old job administering Fentanyl, he is physically and mentally capable of performing that job — and countless other jobs. It would be truly perverse if Stanford were to go on to great success in another occupation but was still able to *360 collect insurance checks on the basis of “disability.”
In sum, we cannot say that Continental abused its discretion when it concluded that the risk of relapse into addiction did not constitute a “disability” under the terms of the benefit plan. Continental’s determination is therefore entitled to our deference, and we affirm the denial of benefits on this ground.[9]
B.
Stanford also argues that Continental’s denial of benefits was unreasonable because Continental violated ERISA’s procedural requirements. Specifically, Stanford claims that Continental failed to consult a health care professional in determining that his risk of relapse did not constitute a disability, and he alleges that Continental failed to consider the materials he submitted in support of his initial appeal.
Stanford first points to a Department of Labor regulation that provides:
[I]n deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment ... the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment.
29 C.F.R. § 2560.503 — 1(h)(3)(iii). Although Continental concedes that it did not consult a health care professional, it maintains that its decision was not based on any medical judgment. Continental is correct, and its failure to consult a health care professional is not a ground for reversal.
Stanford argues that Continental’s denial of benefits necessarily implicated matters of medical judgment. This is not true. Continental did not dispute the medical judgment of Stanford’s treating physician that Stanford suffered no physical impediment to the performance of his work but remained at risk of relapse if he returned to an environment where he was required to administer Fentanyl. Continental’s denial of benefits was based solely on its determination that such a risk of relapse did not fall within the benefit plan’s definition of “disability.” This determination was contractual, not medical. Put differently, consultation with a health care professional would not have yielded any information touching on the appropriate interpretation of the term “disability” in the benefit plan. The benefit plan explicitly grants Continental sole discretionary authority to interpret its terms and provisions, and accordingly Continental was under no obligation to consult a health care professional in exercising this discretionary function.
Stanford also suggests that Continental abused its discretion by failing to consider the materials he submitted in support of his appeal of the denial of benefits. See 29 C.F.R. §§ 2560.503-l(h)(2)(iv) and (4) (2002). But Stanford has introduced no evidence to support an inference that Continental failed to consider his submitted materials prior to the issuance of its decision. The fact that Continental was not persuaded by Stanford’s submission does *361 not mean that it did not consider it. Accordingly, Stanford has not shown that Continental violated ERISA’s procedures in denying his application for long term disability benefits.
In sum, Continental did not abuse its discretion in denying Stanford’s application for long term disability benefits, and the denial must therefore be affirmed. Continental’s determination that risk of relapse was not a form of disability under the benefit plan was reasonable, even if strong arguments exist to the contrary; its failure to consult with a health care professional in making that determination was not improper since the decision was contractual rather than medical; and the fact that it was not persuaded by Stanford’s submissions does not support an inference that Continental improperly disregarded those submissions. The district court was correct to grant summary judgment, and we affirm.

AFFIRMED

. The benefit plan explicitly provides that "[t]he plan administrator and other plan fiduciaries have discretionary authority to determine Your eligibility for and entitlement to benefits under the Policy. The plan administrator has delegated sole discretionary authority to Continental Casualty Company to determine Your eligibility for benefits and to interpret the terms and provisions of the policy-”

.The dissent characterizes this result as creating an equitable exception to the benefit plan's promise of coverage. This misreads our opinion, which is no more than a conventional application of the appropriate standard of review in circumstances where, as here, there is an ambiguity in the language of the benefit plan and the plan administrator enjoys discretionary authority to construe the plan terms. It is not the place of the reviewing court to substitute its own conclusion for the reasoned decision of the plan administrator. Ellis, 126 F.3d at 232.

. See, e.g., Saliamonas v. CNA, Inc., 127 F.Supp.2d 997 (N.D.Ill.2001); Lasser v. Reliance Standard Life Ins. Co., 344 F.3d 381 (3d Cir.2003).

. We do not mean to suggest that it is easy to overcome an addict's temptation, merely that the availability of this choice, however difficult to make, distinguishes Stanford's condition from those of heart-attack-prone doctors.

. See, e.g. Royal Maccabees Life Ins. Co. v. Parker, 2001 WL 1110489 (N.D.Ill.2001) (finding, in a non-ERISA case, that it was unreasonable to require a physician-addict to risk *359 relapse by returning to work in order to demonstrate actual physical inability to perform his duties), vacated by settlement, 2003 WL 22019779 (N.D.Ill.2003).

.See, e.g. Allen v. Minnesota Life Ins. Co, 216 F.Supp.2d 1377 (N.D.Ga.2001) (rejecting an anesthesiologist-addict’s claim that "future potentialities rather than any present impediment to plaintiff's return” to work qualified as a disability under an ERISA-governed benefit plan).

.Stanford cites other cases in which the question whether risk of relapse constitutes a disability has been put to the jury. See, e.g. Hellman v. Union Central Life Insurance Co., 175 F.Supp.2d 1044, 1049-50 (M.D.Tenn. 2001); Brosnan v. Provident Life and Accident Insurance Co., 31 F.Supp.2d 460, 464 (E.D.Pa.1998). These cases merely emphasize that there exists no single legally required answer to this difficult question.

.Doe, 3 F.3d at 87.

. Our conclusion makes it unnecessary to consider whether Stanford would have qualified for benefits had the policy covered risk of relapse. Although Stanford’s treating physician opined that Stanford was "unable” to return to his duties as a nurse anesthetist, the record is anemic with regard to the relative likelihood that Stanford would choose to resume his drug abuse. But Continental's denial of benefits was based on its interpretation of the benefit plan, not on Stanford’s eviden-tiary showing, and the denial is affirmed herein on this ground.