**Carolyn HERZBERGER,**
**Plaintiff–Appellant,**

v.

**STANDARD INSURANCE COMPANY,**
**Defendant–Appellee.**

**Beverly A. Johnson, Plaintiff–**
**Appellant,**

v.

**Prudential Insurance Company of**
**America, Defendant–Appellee.**

**Nos. 99–1944, 99–3116.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 12, 2000

Decided Feb. 23, 2000

Mark D. DeBofsky (argued), DeBofsky & DeBofsky, Chicago, IL, for plaintiff–appellant Carolyn Herzberger.

Lisa Pierobon Mays (argued), Lawton & Cates, Madison, WI, for plaintiff–appellant Beverly A. Johnson.

Mary Kathryn Kelly, Melisa G. Thompson (argued), Cahill, Christian & Kunkle, Chicago, IL, for defendant–appellee Standard Insurance Company.

Valerie L. Bailey–Rihn (argued), Quarles & Brady, Madison, WI, for defendant–appellee Prudential Insurance Company of America.

Before POSNER, Chief Judge, and COFFEY and RIPPLE, Circuit Judges.

POSNER, Chief Judge.

We have consolidated for decision two appeals that raise the same issue regarding the scope of judicial review of decisions by administrators of ERISA welfare or pension plans to deny benefits sought by participants in or beneficiaries of such plans. The issue is whether language in plan documents to the effect that benefits shall be paid when the plan administrator upon proof (or satisfactory proof) determines that the applicant is entitled to them confers upon the administrator a power of discretionary judgment, so that a court can set it aside only if it was "arbitrary and capricious," that is, unreasonable, and not merely incorrect, which is the question for the court when review is plenary ("de novo"). The cases directly on point say "no," ruling that the language in the plan documents must confer discretion in clearer terms. *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 251–52 (2d Cir.1999); *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089–90 (9th Cir.1999) (en banc); *Brown v. Seitz Foods, Inc. Disability Benefit Plan*, 140 F.3d 1198, 1200 (8th Cir.1998); *Bounds v. Bell Atlantic Enterprises Flexible Long–Term Disability Plan*, 32 F.3d 337, 339 (8th Cir.1994); *Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 87–89 (4th Cir.1996). Some of our cases, however, may seem to come close to answering "yes." *Ramsey v. Hercules Inc.*, 77 F.3d 199, 205–06 (7th Cir.1996); *Patterson v. Caterpillar, Inc.*, 70 F.3d 503, 505 (7th Cir.1995); *Donato v. Metropolitan Life Ins. Co*, 19 F.3d 375, 379–80 (7th Cir.1994); *Bali v. Blue Cross & Blue Shield Ass'n*, 873 F.2d 1043, 1047 (7th Cir.1989). The *Patterson* case comes closest, holding (as does *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555–58 (6th Cir. 1998) (en banc), which involved the same language), that discretion is conferred by providing in the plan just that the benefits decision shall be based on such proof as shall be "required" by the plan administra-

tor. *Perez* explains that this phraseology implies that the administrator shall determine how much proof is enough, which the court thought a subjective standard. Another of our cases, *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975 (7th Cir.1999), involved a plan that conditioned benefits on satisfactory proof, but though we reviewed the denial of benefits under the deferential standard, the majority and dissenting opinions assumed rather than decided that it was the proper standard to use. *See id.* at 980; *id.* at 985. The proper standard was simply not an issue.

It is highly desirable to have a uniform national rule. Many employers have branches in more than one state and transfer employees from state to state with some frequency. An employee so transferred will remain under the same ERISA plan; but if courts in different states interpret identical plan language differently, the employee's rights under his plan (rights that as a practical matter include the right of judicial review) may change with every transfer—and usually without his knowing it. Maybe all the holdings can be reconciled; but there is at least a superficial tension, a difference in tone and emphasis, between our cases and *Perez*, on the one hand, and the cases in the other circuits on the other hand, with our cases seeming more inclined to interpret ambiguous language in favor of an inference that it grants discretion to the plan administrator. We write today to clarify our position and reduce the tension. Because we are endeavoring to state a general rule with which aspects of some of our decisions may be inconsistent, we circulated this opinion in advance of publication to all the judges of the court in regular active service, pursuant to 7th Cir. R. 40(e); none voted to hear the case en banc.

■ An ERISA plan is a contract, e.g., *Anstett v. Eagle–Picher Industries, Inc.*, 203 F.3d 501, 503 (7th Cir.2000); *Mathews v. Sears Pension Plan*, 144 F.3d 461, 465 (7th Cir.1998); *Haley v. Paul*

*Revere Life Ins. Co., supra*, 77 F.3d at 88, and the meaning of a contract is ordinarily decided by the court, rather than by a party to the contract, let alone the party that drafted it. It is true that the courts treat an ERISA plan as a special kind of contract, in order to confer greater protection on one of the parties, namely the participant or beneficiary, than on the other, the plan administrator (they do this by invoking their understanding of trust law); and obviously this particular weighting favors, in doubtful cases, a presumption of full judicial review at the behest of the favored party. See *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); see also *Van Boxel v. Journal Company Employees' Pension Trust*, 836 F.2d 1048, 1052 (7th Cir.1987). The *Bruch* case makes plenary review the default rule, that is, the rule to govern when the plan documents contain no indication of the scope of judicial review; and it is a natural and modest extension of *Bruch*, or perhaps merely a spelling out of an implication of it, to construe uncertain language concerning the scope of judicial review as favoring plenary review as well.

■ The same result would follow as a matter of ordinary contract law, with no ERISA thumb on the scales. See John H. Langbein, "The Supreme Court Flunks Trusts," 1990 *Supreme Ct. Rev.* 207, 223–26. It is true that a contract can vary from the norm by including language which indicates that one of the parties is to have discretion to interpret and apply the contract. Typically this is done by providing that performance must be to the promisee's "satisfaction." Even so, unless it's a contract involving "matters which are dependent upon the personal feelings, taste or judgment of the" promisee, *Muka v. Estate of Muka*, 517 N.E.2d 673, 677, 164 Ill.App.3d 223, 115 Ill.Dec. 262 (1987), as in a contract to paint a portrait, "the party to be satisfied must base his determination on grounds which are reasonable and just." *Id.*; see also *Morin Bldg. Products*

*Co. v. Baystone Construction, Inc.*, 717 F.2d 413, 415 (7th Cir.1983); *Wolff v. Smith*, 25 N.E.2d 399, 401–03, 303 Ill.App. 413 (1940); *Gibson v. Cranage*, 39 Mich. 49 (1878). The standard is an objective one and the scope of judicial review is the same as it is with respect to any other alleged breach of contract.

■ An ERISA plan can likewise specify that the administrator has discretion in interpreting or applying it (and we're about to suggest language to make such specification plain and unequivocal), but the conferral of discretion is not to be assumed. Especially not when we consider the importance of the fringe benefits covered by ERISA plans to modern employees. See Langbein, *supra*, at 208. An employee's decision with regard to the purchase of medical insurance and the provision of resources for retirement will often depend critically on his understanding of his rights under his employer's ERISA plan. The very existence of "rights" under such plans depends on the degree of discretion lodged in the administrator. The broader that discretion, the less solid an entitlement the employee has and the more important it may be to him, therefore, to supplement his ERISA plan with other forms of insurance. In these circumstances, the employer should have to make clear whether a plan confers solid rights or merely the "right" to appeal to the discretion of the plan's administrator.

■ We should do what we can to clarify the rights and duties of the parties to ERISA plans. Judges are quick to say what is prohibited, but perhaps too slow to say what is permitted and by doing so dispel legal risk. We have therefore drafted, and commend to employers, the following "safe harbor" language for inclusion in ERISA plans: "Benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them." Cf. *Bartlett v. Heibl*, 128 F.3d 497, 501–02 (7th Cir.1997). An ERISA plan that contains such language will not be open to being characterized as

entitling the applicant for benefits to plenary judicial review of a decision turning him down. *Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104, 1107 (7th Cir. 1998); *Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1147 (7th Cir.1998); *Anderson v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local No. 12 Pension & Welfare Plans*, 991 F.2d 356, 358 (7th Cir. 1993); *Terry v. Bayer Corp.*, 145 F.3d 28, 37 (1st Cir.1998). Equally clearly, the presumption of plenary review is not rebutted by the plan's stating merely that benefits will be paid only if the plan administrator determines they are due, or only if the applicant submits satisfactory proof of his entitlement to them.

If only because the courts have consistently held that there are no "magic words" determining the scope of judicial review of decisions to deny benefits, e.g., *Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1020 (7th Cir.1998); *Sisters of the Third Order of St. Francis v. Swedish–American Group Health Benefit Trust*, 901 F.2d 1369, 1371 (7th Cir.1990); *Kinstler v. First Reliance Standard Life Ins. Co.*, *supra*, 181 F.3d at 251, we forbear to make our "safe harbor" language mandatory, its absence compelling the conclusion that the plan administrator has no discretion. In some cases the nature of the benefits or the conditions upon it will make reasonably clear that the plan administrator is to exercise discretion. In others the plan will contain language that, while not so clear as our "safe harbor" proposal, indicates with the requisite if minimum clarity that a discretionary determination is envisaged. In our *Donato* case, for example, the entitlement to benefits was conditioned on submission of proof "satisfactory to us" (that is, to the plan administrator), and we ruled that the "to us" signaled the subjective, discretionary character of the judgment that was to be made. 19 F.3d at 379; see also *Bali v. Blue Cross & Blue Shield Ass'n, supra*, 873 F.2d at 1047. A more difficult case is *Ramsey*,

where use of the phrase "as determined by the Company" in regard to short-term disability benefits, coupled with the omission of the phrase in regard to long-term disability benefits, persuaded the court that judicial review of the denial of the latter type of benefit was plenary. 77 F.3d at 205–06. The conclusion was right but the implication that judicial review of denial of short-term benefits was not plenary is open to question, depending as it does on the kind of lawyerly comparison of paragraphs that a plan participant is unlikely to undertake.

■ We hold that the mere fact that a plan requires a determination of eligibility or entitlement by the administrator, or requires proof or satisfactory proof of the applicant's claim, or requires both a determination and proof (or satisfactory proof), does not give the employee adequate notice that the plan administrator is to make a judgment largely insulated from judicial review by reason of being discretionary. Obviously a plan will not—could not, consistent with its fiduciary obligation to the other participants—pay benefits without first making a determination that the applicant was entitled to them. The statement of this truism in the plan document implies nothing one way or the other about the scope of judicial review of his determination, any more than our statement that a district court "determined" this or that telegraphs the scope of our judicial review of that determination. That the plan administrator will not pay benefits until he receives satisfactory proof of entitlement likewise states the obvious, echoing standard language in insurance contracts not thought to confer any discretionary powers on the insurer. See *Bounds v. Bell Atlantic Enterprises Flexible Long–Term Disability Plan, supra*, 32 F.3d at 339; 13A George J. Couch, Ronald A. Anderson & Mark S. Rhodes, *Couch on Insurance* § 49A:27 (2d rev. ed. 1982). When an automobile insurance policy provides that the insurer will not pay for collision damage save upon submission of proof of that damage, all it is saying is that it will not pay upon the insured's say-so; it will require proof. There is no reason to interpret an ERISA plan differently. See *Bounds v. Bell Atlantic Enterprises Flexible Long–Term Disability Plan, supra.*

What may have misled courts in some cases is the analogy between judicial review of an ERISA plan administrator's decision to deny disability benefits and judicial review of the denial of such benefits by the Social Security Administration. (One of the appellants, Herzberger, did apply for, and receive, social security disability benefits.) Judicial review of the latter sort of denial is of course deferential, and it is natural to suppose that it should be deferential in the former case as well. But the analogy is imperfect, quite apart from its having been implicitly rejected by the Supreme Court in *Bruch* when it determined that the default standard of review in ERISA cases is plenary review, and quite apart from the fact that the social security statute specifies deferential ("substantial evidence") review. 42 U.S.C. § 405(g). The Social Security Administration is a public agency that denies benefits only after giving the applicant an opportunity for a full adjudicative hearing before a judicial officer, the administrative law judge. The procedural safeguards thus accorded, designed to assure a full and fair hearing, are missing from determinations by plan administrators. An ERISA plan can stipulate for deferential review; it might be entirely rational for an employee to accede to and even prefer such a plan—it might be cheaper. But the stipulation must be clear, and cannot merely be assumed from language that in the closely related setting of insurance contracts has never been thought to entitle the insurer to exercise a discretionary judgment in determining whether to pay an insured's claim. An employer should not be allowed to get credit with its employees for having an ERISA plan that confers solid rights on them and later, when an employee seeks to enforce the right, pull a discretionary judicial review

rabbit out of his hat. The employees are entitled to know what they're getting into, and so if the employer is going to reserve a broad, unchanneled discretion to deny claims, the employees should be told about this, and told clearly.

 This analysis requires us to reverse both decisions before us. In both the district court granted summary judgment for the plan administrator after concluding that the language of the plan documents conferred the power of discretionary judgment on the administrator. In *Herzberger*, where the plaintiff sought disability benefits for chronic fatigue syndrome and the plan administrator determined that the plaintiff's real problem was a mental disorder, for which the plan placed a tight lid on the amount of disability benefits payable, the plan document provided that the administrator "will pay the ... BENEFIT upon receipt of satisfactory written proof that you have become DISABLED." For the reasons that we have explained, this language, standing alone (and there is nothing to qualify or amplify it), does not take the plan out of the default rule entitling the disappointed applicant to plenary review. In *Johnson*, where the plaintiff sought disability benefits on account of her fibromyalgia, the plan document provided that " 'Total Disability' exists when [the plan administrator] determines that all of these conditions are met." The list that follows is made up entirely of objective elements, rather than subjective elements over which discretionary power could be presumed just as in the case of portraits. It is a list of different ways of asking whether the applicant is unable to perform the duties of the job for which he is reasonably fitted by his training or experience.

We therefore remand these cases for plenary review, but we conclude with a glance at two issues that may recur. The first is whether Prudential's letters denying Johnson benefits were sufficiently specific to satisfy 29 C.F.R. § 2560.503–1(f)(3), which requires the plan to specify the information needed to perfect the applicant's claim and explain why that information is necessary. The first letter was clearly insufficient, and the subsequent ones merely repeated the conclusion in the first letter, without amplification. Second, the fact that Standard supported Herzberger's application for social security disability benefits does not estop it to deny that she was disabled within the meaning of the policy, cf. *Ladd v. ITT Corp.*, 148 F.3d 753, 756 (7th Cir.1998), since Standard did not take inconsistent positions. It consistently conceded that she was disabled, but argued—what was relevant only to Herzberger's rights under the plan, and not to her rights to social security disability benefits—that her disability was due to a mental disorder.

REVERSED AND REMANDED.