Cynthia HALL, Plaintiff,

v.

**THE LIFE INSURANCE COMPANY OF NORTH AMERICA, a Foreign Corporation, Defendant.**

No. 00–CV–71830–DT.

United States District Court,
E.D. Michigan,
Southern Division.

May 18, 2001.

Matthew L. Turner, Southfield, MI, for plaintiff.

John E. Nowak, Dickinson Wright, Detroit, MI, for defendant.

## OPINION

DUGGAN, District Judge.

Following the denial of her claim for long-term disability benefits, Plaintiff filed an action under ERISA for the recovery of benefits. The matter is currently before the Court on Defendant's motion for entry of judgment in its favor, and on Plaintiff's cross motion for entry of judgment in her favor. For the reasons set forth below, Defendant's motion shall be granted, and Plaintiff's cross-motion shall be denied.

## Background

Plaintiff is a former employee of State Farm Insurance Company ("State Farm"). A benefit of Plaintiff's employment was disability insurance which State Farm purchased on behalf of their employees through the Defendant.

Plaintiff was placed on a leave of absence by State Farm on November 4, 1996, and was officially terminated by State Farm on December 3, 1996.

On October 14, 1999, after Plaintiff had lost a wrongful termination suit against State Farm, Plaintiff filed a claim for long-term disability benefits with Defendant. Plaintiff claimed to be disabled due to a psychiatric disability. Plaintiff's claim was administered by Cigna Integrated Claim Services ("Cigna"). Plaintiff's claim was ultimately denied by Cigna in a letter, dated February 10, 2000, stating:

> The clinical documentation received does not support your inability to perform your occupation. While the information does support the diagnosis of depression, it does not meet the definition of Disability as spelled out in your policy.

(A.R.233).

Although the denial letter informed Plaintiff of her right to appeal the decision, Plaintiff did not appeal the denial of benefits at that time. Rather, on April 19, 2000, Plaintiff filed a three-count complaint against Defendant alleging: breach of contract (Count I); penalty interest (Count II); and violation of the Michigan Consumer Protection Act (Count III). Plaintiff has since acknowledged that her state law claims are preempted and this cause of action is being pursued strictly under ERISA. (Pl.'s Resp. at 7 n.7).

On July 26, 2000, this Court issued a stipulated Order staying this case for 90 days to allow for an administrative appeal. On October 23, 2000, the administrator confirmed the previous denial of Plaintiff's claim for benefits, stating:

> Under the terms of the Policy, Ms. Hall was not totally disabled when her insurance was in force as an Active Service employee in October/November 1996. The medical information we received does not support the claim that her medical condition was severe enough to have prevented her from working at the time she ceased working. There is also no indication that she was being treated for her condition on a regular basis or that she was even seeing a licensed physician for this condition at the time she ceased working. Evidence of a disability during 1998, 1999 and beyond does not support a claim for benefits under the Policy because at that time Ms. Hall's coverage had terminated. Moreover, Ms. Hall's claim for benefits for a psychiatric disability commencing in November 1996 is not compensable under the terms of the policy, which requires her to be in an approved program of medically supervised treatment for the condition. We must, therefore, regretfully reconfirm our previous denial of benefits.

(Def.'s Br., Ex. C).

On December 18, 2000, Defendant filed a motion for entry of judgment in its favor.

On February 23, 2001, Plaintiff filed a cross motion for entry of judgment in her favor.

*Standard of Review*

 This Court reviews administrator determinations *de novo* unless the ERISA plan vests its administrator with the discretionary authority to determine eligibility for benefits and construe the terms of the plan. *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 709–10 (6th Cir.2000) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989)); *see also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir.1998). When an ERISA plan clearly confers discretion upon an administrator, the administrator's determinations are to be reviewed under an "arbitrary and capricious" standard. *Id.* Discretionary authority does not require the use of the word "discretion" or any other "magic word." Instead, a court should focus on the breadth of the administrators' power, looking at their authority to determine eligibility for benefits or to construe the terms of the plan. *Id.*

 In *Perez*, the court found discretionary authority to exist where the plan made benefits payable only after the insured supplied satisfactory proof of loss. *Id.* Similarly, the policy at issue in this case required satisfactory proof of disability, stating:

> We will begin paying Monthly Benefits in the amount determined from the Schedule when we receive *due proof* that:

1. You become Totally Disabled while insured for this Long Term Disability Insurance, and

2. Your Total Disability has continued for a period longer than the Benefit Waiting Period shown in the Schedule.

(Def.'s Br., Ex. A at B11–1–12)(emphasis added). The Court is satisfied that the plan's requirement of "due proof" before benefits are paid is sufficient to grant discretionary authority upon the administrator. *See Caldwell v. Life Ins. Co. of N. Amer.*, 959 F.Supp. 1361, 1365 (D.Kan. 1997) (holding that language almost identical to the language in the policy at issue in this case, i.e., "due proof" conveys discretionary authority); *Patterson v. Caterpillar, Inc.*, 70 F.3d 503, 505 (7th Cir.1995) (a plan that provides that benefits are payable only upon receipt by the company of "due proof" is "sufficient to apply the arbitrary and capricious standard of review").[1] Therefore, in this Court's opinion, the administrator's determination in this case is to be reviewed under an "arbitrary and capricious" standard.

 "The arbitrary and capricious standard is the least demanding form of judicial review." *Hunter*, 220 F.3d at 710. To satisfy this standard, a plan administrator must only "offer a reasoned explanation, based on the evidence, for a particular outcome." *Id.*

**Discussion**

ERISA requires that the plan administrators discharge their duties "in accordance with the documents and instruments governing the plan." 29 U.S.C.

---

**1.** Plaintiff contends that the holding in *Patterson* is not good Seventh Circuit law in light of *Herzberger v. Standard Ins. Co.*, 205 F.3d 327 (7th Cir.2000). The Seventh Circuit, in *Herzberger*, specifically acknowledged that the plan in *Patterson* "involved the same language" as *Perez*. *Id.* at 329. The *Herzberger* court clearly did not believe that there is a difference between "due proof" and "satisfactory proof;" it simply believed that *Perez* was wrongly decided. However, this Court is obligated to follow the Sixth Circuit's decision in *Perez*.

§ 1104(a)(1)(D). Under the terms of the plan at issue in this case, to establish eligibility for long-term disability benefits Plaintiff had to provide "due proof" that she became totally disabled while insured for the long-term disability insurance. (Def.'s Br., Ex. A at B11–1–12). According to the plan, the insurance ceased on the date the employee's active service ended. (*Id.* at B11–1–3). As Plaintiff was terminated by State Farm on December 3, 1996, the parties agree that Plaintiff had to be disabled under the definition in the plan on or before that date. (Pl.'s Resp. at 17). In addition, the disability had to continue for a period of at least 180 days before benefits were payable under the plan. (Def.'s Br. Ex. A at B11–1–12).

■ In defining the term "total disability," the plan stated "[y]ou will be considered Totally Disabled if, because of Injury or Sickness, you are unable to perform all the essential duties of your occupation." (*Id.* at B11–1–11). Plaintiff contends the "medical evidence is overwhelming" that Plaintiff was totally disabled beginning in November of 1996 and continuing to present. (Pl.'s Resp. at 18). The Court disagrees.

The evidence relied on by Plaintiff includes a physician statement by Dr. Stephanie Lucas on October 19, 1999. (A.R. 347–48). On the portion of the form that the patient completes, Plaintiff indicated that she was unable to work from November of 1996. The portion of the report completed by the physician reflects that Dr. Lucas first saw Plaintiff on September 4, 1992, and then saw her once in 1997 and twice in 1999. Dr. Lucas did check the

"No" box in response to whether, in her opinion, the patient is capable of performing her occupation. However, she qualified that response by writing "undetermined" next to the box. (A.R.348).

Plaintiff also points to a one page "Return to Work/Disability Form," from the Detroit Counseling Center dated November 7, 1996, that indicates Plaintiff was unable to return to employment on that date due to "emotional complication from stress." (A.R.264). The form listed the estimated date of return as "pending until psychiatric evaluation." According to the terms of the plan, Plaintiff had to establish that she was totally disabled on or before December 3, 1996, and that the disability lasted for at least 180 days. However, Plaintiff's second "Return to Work/Disability Form" from the Detroit Counseling Center, dated November 21, 1996, listed the estimated date that Plaintiff could return to work as December 21, 1996. (AR 266).

■ While Plaintiff did submit psychological evaluations performed in October 1998, through April of 2000, that may show she is *currently* disabled, Plaintiff presented no other evidence to show that she was totally disabled under the terms of the plan on or before December 3, 1996.[2] Accordingly, based on the evidence, the Court is satisfied that the administrator has offered a reasoned explanation for its determination that Plaintiff was not "totally disabled" under the terms of the plan when she ceased working for State Farm.

■ Furthermore, even if the record could support a finding that Plaintiff was totally disabled before State Farm termi-

2. Plaintiff also emphasizes that Defendant did not have an independent medical evaluation of Plaintiff. However, Plaintiff did not file her claim, alleging that she was totally disabled in November of 1996, until October of 1999. In light of that delay, Defendant's posi-

tion that "any medical examination at such a remote date from the end of her coverage would not have provided any relevant information as to whether she was totally disabled from her occupation nearly three years earlier," is reasonable. (Def.'s Reply at 9 n. 7).

nated her employment, Plaintiff would still not be entitled to benefits. The plan contained the following exclusion that applied specifically to mental illness:

No Monthly Benefits will be paid if your Total Disability results, directly or indirectly, from:

. . . .

(3) Mental illness, alcoholism, or drug abuse unless, while Totally Disabled, you are:

(a) confined as a bed patient in a licensed hospital; (b) confined as a bed patient in an institution which specializes in care and treatment of such conditions; or (c) in an approved program of medically supervised treatment or rehabilitation.

(Def.'s Br., Ex. A at B11–1–11). Plaintiff, who admitted in a January 4, 2000 letter to the administrator that her "injury is continuing to this date because it has gone untreated since its inception in 1996," has submitted no evidence to show that she was confined as a bed patient in a licensed hospital or an institution, or that she was in an approved program of medically supervised treatment or rehabilitation, during the relevant time period.

## Conclusion

Accordingly, the Court is satisfied that the administrator's denial of benefits in this case was not arbitrary or capricious. Furthermore, even if this Court were to conclude that the proper standard of review is *de novo*, for the reasons set forth in this Opinion, this Court would still conclude that the administrator's decision was correct. Therefore, Defendant's motion for entry of judgment in its favor shall be granted, Plaintiff's cross motion for entry of judgment in her favor shall be denied, and this action shall be dismissed.

A Judgment consistent with this Opinion shall issue forthwith.