Ricky JONES, Plaintiff,

v.

**UNION INDIVIDUAL ACCOUNT RETIREMENT FUND,**
Defendant.

No. 04–C–0409(E).

United States District Court,
E.D. Wisconsin.

June 25, 2004.

John C. Lapinski, Matthew S. MacLean, Michael Best & Friedrich, Milwaukee, WI, for defendant.

## DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRE-LIMINARY INJUNCTION, AND DISMISSING CASE

CLEVERT, District Judge.

On June 16, 2004, and June 24, 2004, this court conducted hearings on plaintiff's motion for preliminary injunction. The hearing was continued for the purpose of allowing plaintiff Ricky Jones, who appeared pro se, to present all evidence in support of his case. After hearing argument and reviewing the Union Individual Account Retirement Plan documents in dispute, the court found that Jones had made a material misrepresentation to the court, that his motion for preliminary injunction had no merit, and that the case must be dismissed. The findings on the record are supplemented below.

In his complaint, Jones alleged that the Plan "trustees acted arbitrarily when they did not allow total distribution from a single account." He further alleged that "there is no longer a pemb [preengineering metal buildings union] and they should therefore allow distribution." Jones' preliminary injunction motion sought an order forcing the defendant to allow distribution of the funds in his account.

The party seeking the injunction bears the burden of showing that (1) its case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir.2001). If the court is satisfied that those requirements have been met, then it must "consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied." *Id.* Finally, the court must con-

sider how the public's interests would be affected by granting or denying the preliminary relief. *Id.* In the case at bar, Jones sought a mandatory preliminary injunction, that is, an injunction requiring an affirmative act by the defendant. Mandatory preliminary injunctions "are ordinarily cautiously viewed and sparingly issued." *Jordan v. Wolke,* 593 F.2d 772, 774 (7th Cir.1978).

■ On the facts presented, Jones had no likelihood of success on the merits. The arbitrary and capricious standard applies in cases such as this where the policy clearly expresses that the plan administrator has discretion to grant or deny claims for benefits. *Herzberger v. Standard Ins. Co.,* 205 F.3d 327, 331 (7th Cir.2000); *see* Section 6.1 of the Plan Document. Mindful of this standard, the court turned to Section 11.2 of the Plan Document, which identifies three types of distributions from the Fund: (1) retirement; (2) financial hardship; and (3) voluntary distribution.

Jones applied for an "out of industry withdrawal," which falls under retirement. (Plaintiff's Motion, Ex. A) Section 11.2(a)(4) of the Plan Document provides that retirement, regardless of age, occurs when no contributions have been required to be paid to the Employee's Individual Account for at least 24 months. The last contribution was made in August of 2002. Accordingly, the Trustees determined that Jones was not eligible for an out of industry withdrawal until September 1, 2004 (24 months after the last contribution was required to be paid on his behalf). (Plaintiff's Motion, Ex. B)

■ In a letter to the Fund dated November 20, 2003, (attached to plaintiff's motion), Jones asserted that he had been out of the pre-engineers fund for over two years. To the extent that Jones was attempting to divide contributions between those received while he was covered by the pre-engineered metal building collective bargaining agreement versus the regular iron workers' collective bargaining agreement, neither Section 11.2(a)(4) nor Section 9.1 (Establishment of an Account) differentiates between contributions made under different agreements. Rather, an individual account is established for each employee and "all contributions" are allocated to the individual Account. *See* Section 9.1 of the Plan Document.

■ Also, Jones complained that he was not granted the entire amount of a hardship withdrawal on September 1, 2002. However, Section 11.2(b) clarifies why Jones was not eligible for a full withdrawal:

## ARTICLE XI

### BENEFITS AND ELIGIBILITY

Section 11.2

(b) In addition to a distribution upon retirement, as provided in the preceding subsection (a), an Employee may also receive a distribution on account of a demonstrable financial hardship, subject to the provisions of paragraph (1) of this subsection, or upon request, subject to the provisions of paragraph (2) of this subsection, unless otherwise prohibited by the provisions of this subsection. In addition to the limitations set forth respectively in paragraphs (1) and (2) below, no Employee shall be eligible to receive both a hardship distribution under paragraph (1) and a voluntary distribution under paragraph (2) during any period of 24 consecutive months unless, effective on or after June 1, 1998, the Employee has attained age 60 or older, and **no Employee who is covered by the pre-engineered metal building collective bargaining agreement shall be eligible to receive a distribution under either paragraph of this subsection with respect to any contributions, and**

earnings thereon, received and allocated to his Individual Account on or after October 1, 1995.** Any distribution which is paid to an Employee under this subsection shall be paid in accordance with Section 11.4 of the Plan.

The August 29, 2002, letter from the Fund to Jones explained that contributions made to the Plan while Jones was a pre-engineer are not eligible for a hardship withdrawal because the pre-engineer groups was added specifically for retirement withdrawals only. (Plaintiff's Motion, Ex. 1) Hence, the plain language of the Plan Documents unambiguously resolved this dispute against Jones.

 Next, and most troublesome to this court, Jones did not show he will suffer irreparable harm if the defendant fails to permit him to withdraw the balance in his account. Jones claimed that his Fund account made him ineligible for the appointment of a state public defender in criminal proceedings in Racine County Circuit Court and that he was suffering harm of constitutional proportion. What he did not disclose was that judgment was entered in the Racine County Circuit Court case the day before this court's hearing on June 16. When Jones appeared before this court on June 16, he had entered a guilty plea in Racine County Circuit Court and had been sentenced. Moreover, he made no showing that he was declared ineligible because of his Fund account or that he notified the public defender's office that he could not access his Fund account until September 1, 2004. An April 5, 2004, letter from the Office of the State Public Defender invited Jones to "provide additional information or documentation" related to his financial circumstances. (Plaintiff's Motion, Ex. H) Again, there was no evidence that he returned to the State Public Defender with additional information.

In view of the foregoing proceedings and supplemental findings,

IT IS ORDERED that plaintiff's motion for preliminary injunction is denied.

In as much as the plaintiff has advised the court that there is not additional evidence to support his claim and the court finds the defendant did not act arbitrarily and capriciously in refusing to distribute to the plaintiff the balance in his Fund account,

IT IS FURTHER ORDERED that this case be dismissed for failure of proof.