Ronald **RAFINE**, Plaintiff,

v.

**STEEL DYNAMICS, INC.,** and The Steel Dynamics, Inc., Health and Dental Plan, Defendants.

No. 1:03–CV–330.

United States District Court, N.D. Indiana, Fort Wayne Division.

Dec. 21, 2004.

Christopher C. Myers, Christopher Myers and Associates, Fort Wayne, IN, for Plaintiff.

Thomas J. Markle, Anthony M. Stites, Barrett and McNagny, Fort Wayne, IN, for Defendant.

### MEMORANDUM OF DECISION AND ORDER

COSBEY, United States Magistrate Judge.

## I. INTRODUCTION

After drinking a "significant amount" of alcohol and fighting with his girlfriend, Plaintiff Ronald Rafine ("Rafine") attempted to take his own life by shooting himself in the face. Although he survived, he sustained serious injuries which required extensive medical treatment. He sought reimbursement for his medical expenses from Defendant, The Steel Dynamics, Inc., Health and Dental Plan ("the Plan"), which denied his claim. Rafine then brought this lawsuit against the Plan under 29 U.S.C. § 1132(a)(1)(B), better known as § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), alleging that the Plan's denial of his claim was arbitrary and capricious.[1]

Both Rafine and the Plan have now moved for summary judgment. The primary issue before the Court is whether Rafine's injuries "resulted from a medical condition," namely alcoholism or depression. If they did, federal regulations require the Plan to reimburse his claim. For the reasons given below, the Court finds that Rafine's injuries were caused by a medical condition, and thus Rafine's motion will be GRANTED and the Plan's motion will be DENIED.[2]

---

1. Accordingly, subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

2. Rafine's complaint also contains a claim

## II. FACTS[3]

Rafine was employed at Steel Dynamics and enrolled in the Plan from 1998 to 2002. Although his employment was terminated on August 13, 2002, he was still covered by the Plan on the date of his suicide attempt the following month.

On September 15, 2002, Rafine had an argument with his girlfriend severe enough that the police were called to investigate. While the police were en route to his home, Rafine shot himself through the jaw in an attempt to commit suicide. Fortunately, the bullet exited through his nasal cavity before reaching his brain, and thus he survived. Nonetheless, he suffered serious injuries, including "open comminuted mandible, maxillary, and nasal fractures," as well as "intraoral lacerations, laceration of the tongue and the hard palate, and multiple teeth injuries." Rafine was first treated at DeKalb Memorial Hospital, but was soon airlifted to Parkview Hospital, where he recuperated for eleven days.

While at Parkview, Rafine received psychiatric evaluation and treatment, mostly from Dr. Mark Helms ("Dr.Helms"). Rafine told Dr. Helms that he had experienced "mood changes" over the preceding months and admitted that his alcohol use had been increasing. He also told Dr. Helms that alcohol played a "major role" in his suicide attempt; although he could not remember how much he had to drink that night, he knew it was a "significant amount."[4] Dr. Helms diagnosed Rafine with "Major Depressive Disorder, Single Episode" and "Alcohol Abuse." Dr. Helms treated Rafine's depression with medication and counseling, but did not immediately recommend treatment for alcoholism. He noted that Rafine "does not feel he needs any ... counseling for his alcohol abuse history, but this will continue to be explored with [Rafine] throughout his partial hospitalization." There is no evidence that Rafine ever received treatment for alcoholism.

On November 5, 2002, Dr. Helms wrote a letter opining on the cause of Rafine's suicide attempt:

I saw Ronald Rafine on Sept. 23, 2002[,] at Parkview Hospital main unit, for a

against Defendant Steel Dynamics, Inc. ("Steel Dynamics"), his former employer, under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq. However, Steel Dynamics moved for summary judgment on this claim, and Rafine explicitly declined to oppose it. (Pl.'s Am. Cross–Mot. at 1 n. 1.)

Moreover, Steel Dynamics is not a proper defendant to Rafine's ERISA claim. Generally, "ERISA permits suits to recover benefits only against the plan as an entity." Riordan v. Commonwealth Edison Co., 128 F.3d 549, 551 (7th Cir.1997). There are exceptions to this rule, see Mein v. Carus Corp., 241 F.3d 581, 585 (7th Cir.2001); Neuma, Inc. v. AMP, Inc., 259 F.3d 864, 872 n. 4 (7th Cir.2001); Riordan, 128 F.3d at 551; Slaughter v. AT & T Info. Sys., Inc., 905 F.2d 92, 94 (5th Cir. 1990); Musmeci v. Schwegmann Giant Super Mkts., 159 F.Supp.2d 329, 352 (E.D.La.2001), but Rafine does not claim that they apply here. To the contrary, he acknowledges that the Plan is the only proper defendant. (See Pl.'s Am. Cross–Mot. at 1 n. 1.)

Because Rafine has abandoned his FMLA claim, and because Steel Dynamics is not a proper defendant to Rafine's ERISA claim, Defendants' motion for summary judgment is GRANTED as to Steel Dynamics.

3. The facts of this case are not in dispute. Thus, for brevity's sake, they are recited here without citation to the record.

4. Rafine does not actually remember consuming alcohol on the day of his suicide attempt; in fact, he remembers nothing from that day or the two-week period preceding it. He made these statements about his alcohol consumption to Dr. Helms based on what other witnesses had told him about the incident. However, his account is corroborated by DeKalb Memorial Hospital personnel who smelled alcohol on Rafine while treating him.

psychiatric consult, after his self-inflicted gunshot wound. His depression had begun to develop, two to three months prior to the incident, and had increased in severity, leading up to his suicide attempt.

His current diagnosis of Major Depression, Single Episode, represents an ongoing medical condition, during at least the last four to five months. I wish that I would have had the opportunity to evaluate and treat Ron for his Major Depressive Disorder, three to four months ago, which most likely would have prevented his self-inflicted injury.

Relying on this letter, Rafine made a claim to the Plan for reimbursement of his medical expenses related to the gunshot wound. During the claims process, the Plan retained Dr. Larry Graham ("Dr.Graham") to independently review Rafine's medical records and Dr. Helms's conclusions. Dr. Graham concluded as follows:

In my opinion, the suicide attempt was a function of alcohol intoxication superimposed on a more recent history of alcohol dependence and substance induced mood disorder. Dr. Helms in his Psychiatric consultation clearly related in time the onset of his depressive symptoms to his increased alcohol intake. The development of these depressive symptoms exactly corresponds to the increased alcohol consumption. It is my opinion that the diagnosis of Major Depression would not be appropriate and the DSM IV specifically disallows a diagnosis of Major Depression if it can be associated with a chemical dependency.

The Plan eventually denied Rafine's claim, leading to the instant lawsuit.

### III. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir.2003). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne,* 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

The existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs,* 335 F.3d 643, 647 (7th Cir.2003). Rather, the process of taking the facts in the light most favorable to the nonmovant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.,* 246 F.3d 975, 983 (7th Cir.2001) (quoting *Hendricks–Robinson v. Excel Corp.,* 154 F.3d 685, 692 (7th Cir.1998)).

## IV. DISCUSSION

### A. The Plan's Decision Cannot Be Overturned Unless It Was Arbitrary and Capricious

Rafine's claim arises under ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)), which enables a "participant"[5] in an employee benefits plan "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[6] When a plaintiff seeks benefits under § 502(a)(1)(B), the defendant's decision to deny or terminate benefits "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 112, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). However, where the plan confers discretionary power on an administrator or fiduciary, "the proper standard of review is the deferential 'arbitrary and capricious' one." *Ramsey v. Hercules Inc.,* 77 F.3d 199, 202 (7th Cir.1996).

■ Much ink has been spilled debating what plan language confers the necessary discretion on administrators to trigger deferential review. *See, e.g., Herzberger v. Standard Ins. Co.,* 205 F.3d 327, 329 (7th Cir.2000) (collecting cases). Accordingly, the Seventh Circuit specified the following "safe harbor" language: "Benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them." *Id.* at 331. While there are no "magic words" necessary to ensure that an administrator's decisions will receive deferential review, language such as that suggested by *Herzberger* is sufficient. *Id.* Here, the Plan provides that "[t]he Plan Administrator controls and manages the operation and administration of the Plan and has the exclusive right to interpret the Plan and to decide all matters arising under the Plan." This language is sufficient to entitle the Plan to an "arbitrary and capricious" standard.[7]

Under the arbitrary and capricious standard, an administrator's judgment will not be overturned where the administrator "makes an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts." *Carr v. Gates Health Care Plan,* 195 F.3d 292, 294 (7th Cir.1999). In other words, it is not this Court's function to "decide whether [it] would reach the same conclusion as the [administrator] or even rely on the same authority." *Id.* Rather, the Court can only overturn the decision if it finds an abuse of discretion; that is, the decision must be "not just clearly incorrect but downright unreasonable." *Fuller v. CBT Corp.,* 905 F.2d 1055, 1058 (7th Cir.1990); *Carr,* 195 F.3d at 294.

In this case, the Plan initially denied Rafine's claim pursuant to a "source of injury" clause in the Plan, which states that no benefits are payable for "[c]harges

---

5. The parties do not dispute that Rafine is a "participant" as defined by ERISA. *See* 29 U.S.C. § 1002(7) (ERISA § 502(7)).

6. Rafine's complaint fails to specify which of ERISA's remedial provisions applies to his claim. (*See* Compl.) However, the Plan argues that § 502(a)(1)(B) is the only provision that Rafine can invoke on these facts (Def.'s Mem. in Supp. of Mot. for Summ. J. at 15),

and Rafine does not dispute this conclusion. Thus, the Court treats Rafine's claim as arising under § 502(a)(1)(B) only.

7. *Rafine implicitly agrees that this is the proper standard,* as he repeatedly uses the term "arbitrary and capricious" to describe the Plan's actions. (Pl.'s Am. Cross–Mot. for Summ. J. at 1, 4, 5, 7.)

incurred in connection with any intentionally self-inflicted Injury or Illness regardless of whether the Coverage Person was sane or insane." Rafine appealed the initial denial and pointed to recently-issued Department of Labor ("DOL") regulations limiting the use of "source of injury" exclusions. Those regulations (which undisputedly applied to the Plan when considering Rafine's claim) provide that:

If a group health plan or a group health insurance coverage generally provides benefits for a type of injury, the plan or issuer may not deny benefits otherwise provided for treatment of the injury if the injury results from ... a medical condition (including both physical and mental health conditions).

29 C.F.R. § 2590.702(b)(2)(iii). Rafine argued that his injuries "result[ed] from" two "medical conditions," alcoholism and depression, and thus that the DOL regulations required the Plan to provide benefits. The Plan determined that Rafine's injuries did not result from either condition and therefore denied his appeal.

Accordingly, the central question now before the Court is: was the Plan's determination that Rafine's injuries did not "result from" either alcoholism or depression arbitrary and capricious?

### B. The Plan's Use of Conflicting Rationales Was Arbitrary and Capricious

■ Two doctors have opined on the cause of Rafine's suicide attempt and resulting injuries. Dr. Helms, Rafine's doctor, diagnosed Rafine with depression and concluded that if he "had the opportunity to evaluate and treat [Rafine] for his Major Depressive Disorder, three to four months ago, [it] most likely would have prevented his self-inflicted injury." In other words, Dr. Helms believes that Rafine's injuries resulted from depression. Dr. Graham, the Plan's doctor, disagreed with the diagnosis of depression, but concluded that the suicide attempt was caused by "alcohol intoxication superimposed on a more recent history of *alcohol dependence* and substance induced mood disorder" (emphasis added). In other words, Dr. Graham believes that Rafine's injuries resulted from alcoholism.[8] Thus, the two doctors who opined on the cause of Rafine's injuries agree that they resulted from a medical condition; they disagree only on which medical condition.

The Plan nonetheless determined that Rafine's injuries were caused by neither medical condition, a result which it was able to reach only through utterly disingenuous reasoning. In its denial letter, the Plan first considered whether Rafine's injuries resulted from alcoholism:

You were unable to confirm or deny if you had been drinking on the night in question and how much you had been drinking.... Dr. Helms did not treat you for alcoholism or alcohol abuse nor did he diagnose that you were an alcoholic.... You also stated that you did not feel that you had an alcohol dependency prior to the incident, and you have never considered yourself to be an alcoholic. Therefore, based on Dr. Helms'[s] conclusions and your statement, SDI concludes that alcoholism and alcohol dependency was not a 'medical condition' that existed at the time of the gun shot wound.

In short, the Plan claimed that there was no evidence of "alcoholism [or] alcohol dependency"—without even mentioning that

---

8. The Plan defines "alcoholism" as "[a]n alcohol-induced disorder which produces a state of psychological and/or physical *depen-* *dence*" (emphasis added). Thus, Dr. Graham's diagnosis of "alcohol dependence" is synonymous with "alcoholism."

*its own doctor* attributed Rafine's injuries to "alcohol dependency."

Yet, in the very next breath, when considering whether Rafine's injuries resulted from depression, the Plan pointed the finger at alcohol and took Dr. Graham's word as gospel:

> As stated before, Dr. Helms'[s] notes and the medical records indicate that you had consumed a "significant amount" of alcohol before the incident and you had previously admitted to Dr. Helms that alcohol played a major factor in your suicide attempt.... However, as stated above, SDI has concluded that you were not suffering from alcoholism or that your alcohol usage would constitute a "mental condition." Alcohol usage, therefore, appears to be a contributing factor for your actions. Second, SDI concludes that the argument you had [with your girlfriend] was an additional contributing factor. Based on these contributing factors, SDI concludes that the injury was not "the result of" depression ... In making this conclusion, SDI has also considered the opinion of Dr. Graham, who stated:
>
> > It is my opinion that the diagnosis of Major Depression would not be appropriate and the DSM IV specifically disallows a diagnosis of Major Depression if it can be associated with a chemical dependency.

Comparison of these two passages reveals that the Plan's reasons for rejecting alcoholism as the cause of Rafine's injuries are irreconcilable with its reasons for rejecting depression. For one thing, the Plan has whipsawed Rafine between Dr. Helms and Dr. Graham. The Plan's "log-ic" can be paraphrased as follows: (1) Dr. Helms says the injuries resulted from depression; (2) Dr. Graham says that it was not depression, but alcoholism; (3) it could not have been alcoholism, because Dr. Helms said it was only depression; (4) it could not have been depression, because Dr. Graham said it was alcoholism; and therefore (5) it was neither alcoholism nor depression. This is sophistry. One moment, the Plan accepts Dr. Helms's diagnosis and ignores Dr. Graham's altogether, and the next moment, accepts Dr. Graham's diagnosis and ignores Dr. Helms's. This circular reasoning is hardly "an explanation ... that is satisfactory in light of the relevant facts." *Carr*, 195 F.3d at 294.[9]

Nor is this the only contradiction in the Plan's reasoning. When discussing alcoholism, the Plan stresses Rafine's inability to confirm or deny that he was drinking on the day of his injury, and uses this purported lack of evidence as a reason to reject alcoholism as a cause of injury. But just a couple of paragraphs later, the Plan cites evidence that Rafine *was* drinking and uses it as a reason to reject depression as a cause. Again, the Plan cannot have it both ways; that is, it cannot arbitrarily change its story from one paragraph to the next simply to deny Rafine's claim.

In short, because the Plan adopted two contradictory versions of the "relevant facts," it failed to "make[ ] an informed judgment and articulate[ ] an explanation for it that is satisfactory in light of the relevant facts." *Id.* Stated simply, the Plan's reasons for rejecting alcoholism and depression as causes of Rafine's injuries, when compared to one another, were

---

**9.** As noted above, both doctors concluded that Rafine's injuries resulted from a medical condition. Thus, it does not matter which doctor's diagnosis is correct because under either one, the regulations require the Plan to provide benefits. In order to escape the reach of the regulations, the Plan would have had to make a reasonable case that both doctors were wrong, and it failed to do so.

"downright unreasonable," and thus the Plan's denial of benefits cannot stand. *Fuller*, 905 F.2d at 1058; *Carr*, 195 F.3d at 294.

### C. The Plan's Rejection of Depression as a Cause, Standing Alone, Was Also Arbitrary and Capricious

■ Aside from its contradictory rejections of alcoholism and depression, the Plan's decision must be overturned for another reason: its rejection of depression was arbitrary and capricious, even if considered in isolation.

The DOL regulations cited above, which forbid the Plan from "denying benefits otherwise provided for treatment of [an] injury if the injury results from . . . a medical condition (including both physical and mental health conditions)," also contain examples to illustrate how the regulations work. 29 C.F.R. § 2590.702(b)(2)(iii). One of the examples is highly pertinent here:

> Example 1.(i) Facts. A group health plan generally provides medical/surgical benefits, including benefits for hospital stays, that are medically necessary. However, the plan excludes benefits for self-inflicted injuries or injuries sustained in connection with attempted suicide. Individual D suffers from depression and attempts suicide. As a result, D sustains injuries and is hospitalized for treatment of the injuries. Pursuant to the exclusion, the plan denies D benefits for treatment of the injuries.
>
> (ii) Conclusion. In this Example 1, the suicide attempt is the result of a medical condition (depression). Accordingly, the denial of benefits for the treatments of D's injuries violates the requirements of this paragraph (b)(2)(iii) because the plan provision excludes benefits for treatment of an injury resulting from a medical condition.

*Id.* This Example perfectly describes the instant case, yet the Plan never mentioned it nor attempted to distinguish it. If "Individual D" in the Example is entitled to benefits, then surely Rafine is too.

Indeed, the Plan admitted in its denial letter that Rafine suffers from depression: "SDI has no contrary evidence to refute your position that you were suffering from depression at the time of your injury." Nonetheless, it determined that Rafine's injuries did not "result from" his depression, largely because his drinking and argument with his girlfriend on the day of his suicide attempt were "contributing factors." While those factors certainly may have "contributed" to Rafine's injuries, the Plan fails to explain how they have any legal significance. The DOL regulations apply to all injuries which "result from" a medical condition; they do not require that an injury result *solely* from a medical condition. *See* 29 C.F.R. § 2590.702(b)(2)(iii). Accordingly, the presence of "contributing factors" is irrelevant.

In short, the Plan admitted that Rafine suffered from depression at the time of his self-inflicted injury, but then ignored an unfavorable Example in the regulations directly on point, and instead offered spurious reasons for concluding that Rafine's injuries did not result from his depression. This is "downright unreasonable," *Fuller*, 905 F.2d at 1058, and provides another reason why the Plan's denial cannot stand.

### V. CONCLUSION

For the above reasons, the Court finds as a matter of law that Rafine is entitled to benefits under the Plan and that the Plan's denial of his claim for benefits was arbitrary and capricious. Therefore, Rafine's motion for summary judgment (Docket # 36) is GRANTED. Defendants' motion for summary judgment (Docket # 26) is

DENIED as to the Plan but GRANTED as to Steel Dynamics.

As the parties' briefs do not address potential remedies, the issue will be taken up at the final pretrial conference, currently set for February 10, 2005, at 1:00 p.m. Counsel are encouraged to discuss the possibility of stipulating to an appropriate remedy prior to the conference.